UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID MASTRIANNI, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Civil Action No. 3:02CV2261 (CFD)** |
| | : | |
| BAYER CORPORATION and | : | **February 23, 2005** |
| BAYER CORPORATION | : | |
| DISABILITY PLANS, | : | |
| | : | |
| Defendants. | : | |

DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Bayer Corporation ("Bayer" or the "Company") and the Bayer Corporation Disability

Plans ("the Plan"), collectively referred to below as "defendants," by their counsel, Wiggin and

Dana LLP, submit the following memorandum of law in support of their motion for summary

judgment.  The operative Complaint in this action consists of a single count in which plaintiff,

David Mastrianni (hereinafter "Mastrianni"), alleges that defendants failed to provide him with

disability benefits in violation of the Employee Retirement Income Security Act of 1974, as

amended, 29 U.S.C. § 1001 *et seq.* (hereafter referred to as "ERISA").  For the reasons that

follow, defendants are entitled to summary judgment as there are no genuine issues as to any

material fact with respect to Mastrianni's claims.

## Introduction

In connection with a termination of employment as a result of position elimination, Mastrianni was presented with a Separation Agreement and General Release pursuant to the Bayer severance pay plan. In exchange for specified benefits from Bayer, Mastrianni was required to execute a general release. He initially was given 45 days to consider and sign it and, was given an additional seven days to revoke his signature. He was advised to consult with counsel, and did in fact do so. His counsel sought and obtained a 21-day extension of the original deadline. During this extended consideration period, Mastrianni, through his counsel, asked Bayer for a "carve out" from the general release in order for him to seek disability benefits under Bayer's disability plan. Bayer, through its counsel, refused, expressly stating its position that if Mastrianni signed the Separation Agreement, any claim for disability benefits would be waived. After his counsel sought and obtained yet another extension of time for him to further consider the Separation Agreement, Mastrianni signed it, and accepted all of the benefits for which he was eligible under the severance pay plan. Notwithstanding his signing of the Separation Agreement in consultation with counsel, and the fact that he thereafter could have, but chose not to, exercise his right to revoke it, Mastrianni has now filed suit for disability benefits. Because Mastrianni knowingly and voluntarily executed a release in exchange for severance benefits, his current claim is barred as a matter of law.

## Statement of Facts

### A.    *The Bayer Disability and Severance Plans*

Bayer maintains an ERISA employee welfare benefit plan, the Bayer Corporation Disability Plans, to provide employees with disability benefits if an eligible employee cannot

2

work because of illness or injury.  (Local Rule 56(a)1 Statement of Undisputed Facts at ¶ 1).[1]

There are two parts to the plan – short term disability (STD) benefits, providing either 60% or

100% of salary for up to 26 weeks (depending on length of service), and long term disability

(LTD) benefits of 50-70% of salary if the inability to work exceeds 26 weeks.  As defined in the

summary plan description, "[d]isability means that you are under the care of a physician and,

based on medical evidence of your illness or injury, you are unable to do the essential functions

of your job."  (Statement at ¶ 2).  Bayer utilizes the service of Core Inc., a third-party claims

administrator, for the STD component of the plan.

Section 3.4 of the Plan reads as follows:

> Duration.  Each person who becomes a Participant will remain a Participant until the first
> to occur of the date:  (1) coverage ceases under the terms of the Benefit Descriptions, (2)
> the Participant ceases to be actively employed in an employment status covered by the
> Plans unless such Participant is on leave under (i) the Family and Medical Leave Act of
> 1993 or other unpaid leave of absence (for up to four months) approved by an Employer
> or (ii) the Short-term Disability Plan, or (3) the Participant is no longer in the group of
> Employees covered by the Plans. . . .

(Statement at ¶ 3).  Similarly, the summary plan description for the disability plan contains the

following provision on "When Participation Stops" for purposes of STD benefits:

> If you retire, die, or leave the company for any reason other than a disability or
> company-approved unpaid leave of absence (up to four months), your eligibility to
> participate in the Plan will end on the last day of actual work. . . .

(Statement at ¶ 4).  The exact same provision applies to LTD benefits.  (Statement at ¶ 5).

Bayer also provides a severance pay plan to provide income if employment ends under

designated circumstances.  One such circumstance involves "[e]limination of your position with

the company."  (Statement at ¶ 6).  In order to receive benefits, an employee must "[s]ign any

forms required by the plan administrator, including a general release of liability for all claims"

and "[c]omply with any additional requirements included in [the employee's] employment

---

[1]  Hereinafter cited as "Statement at ¶ __."

contract or employee agreement." (Statement at ¶ 7). *See also* (Statement at ¶ 7)("As conditions to initial receipt and continuation of benefits under this Plan, all Severed Employees must . . . (iv) execute and deliver to his or her Employer such forms as the Administrative Committee, in its sole discretion, shall decide, including but not limited to a general release . . . .").

As to both the disability and severance plans, Bayer expressly reserved the right to modify or amend the plans or the summary plan descriptions from time to time and in its sole discretion. Bayer also reserved the right to terminate the plans at any time, with the rights of participants upon termination limited to claims incurred and due up to the date of termination. (Statement at ¶ 8).

### B.   *Mastrianni's Claim for Disability Benefits*

Mastrianni performed his job functions at Bayer in the Human Resource Department on a part-time basis from August 2001 through March 19, 2002.  (Statement at ¶¶ 9 and 10).  He received STD benefits from December 14, 2001 through March 18, 2002.  (Statement at ¶ 10). On March 19, 2002, Mastrianni was notified that he was laid off as part of a reduction-in-force. (Statement at ¶ 11).  Mastrianni was presented with a Separation Agreement and General Release pursuant to the Bayer Corporation Severance Pay Plan and a letter outlining his benefits under that Plan.  (*Id.*).  The letter stated that his termination was effective March 19, 2002.  (Statement at ¶ 12).  It outlined the substantial benefits for which Mastrianni was eligible under Bayer's severance plan upon signing the Agreement – namely, 26 weeks of salary continuation, health insurance and other designated benefit continuation during the severance pay period, and outplacement services.  (*Id.*).  Paragraph 8 of the letter, however, expressly states:  "Your participation in the Disability plan will end on your last actual day of work." (Statement at ¶ 13).

The accompanying Separation Agreement stated, in relevant part:

4

Employee acknowledges that he has been advised by the Company to review this Agreement and the Plan *and to discuss his options with an attorney of his own choosing. . . .*

*Employee makes the following representations to the Company, each of which is necessary before the Company will pay severance benefits to Employee under the Plan*:

That the payments and other benefits which the Company has agreed to provide under the Plan are payments and benefits to which he would not be entitled were it not for this Agreement.

*That he was given sufficient time to consider whether or not to sign.*

That he is aware that federal and some state and local laws prohibit discrimination against employees because of their race, color, religion, sex, sexual preference, marital status, age, national origin and disability and that an employee who believes that he has been discharged or otherwise discriminated against for any of these reasons has a right to file a lawsuit or initiate other proceedings against the Company and to recover damages if it is proved that the Company violated any one of these laws.

*That he is aware that, by signing this Agreement, he is giving up any right to sue the Company, or to initiate any other legal proceedings against the Company, not only on the basis of the discrimination laws mentioned above, but for any other claims which he has or believes he has based upon any event which occurred before this Agreement is signed, except claims for vested pension benefits and claims which cannot legally be waived, such as for workers' compensation. . . .*

*That he has read and understands each and every provision in this Agreement; that he has received and has had the opportunity to read the summary plan description of the Plan; and that he has had the opportunity to read the Plan, a copy of which will be given to Employee if he requests it. . . .*

Employee understands that the Company is not offering this Agreement because it believes that the Employee has any valid legal claim against the Company. Instead, an agreement is offered to every terminating employee who qualifies for severance pay regardless of the specific facts relating to the particular Employee's termination. Every Employee who is offered this Agreement has the right to reject it, and give up severance pay, or to sign it, accept the severance pay and give up whatever legal claims the Employee might believe he has against the Company.

In exchange for the payments and benefits offered by the Company under the Plan, *Employee hereby releases and discharges the Company, its benefit plans, officers, directors, employees, agents, shareholders, affiliates, successors and*

*assigns from all liability upon claims of every nature whatsoever,* including, without limitation, claims of negligence, breach of contract, wrongful discharge, violation of federal, state or local laws, among which are laws which prohibit discrimination on the basis of race, color, national origin, religion, sex, age and disability, such as the Age Discrimination in Employment Act of 1967. *This Release covers claims, known or unknown, which are based upon any act, event or failure to act which occurred before the date on which this Agreement is signed and becomes effective.* Employee further agrees that he will not file, or permit to be filed in his name or on his behalf, any lawsuit against any of the persons or entities released in this paragraph. . . .

Except as specifically mentioned otherwise herein or in the Plan, all prior agreements and understandings, written or oral, between Employee and the Company are replaced and superseded by the Plan and this Agreement, and are no longer of any force and effect. . . .

Unless otherwise provided in an addendum, the Employee's acceptance of this Agreement will be invalid if it occurs after the passage of more than forty-five (45) days following Employee's initial receipt of the Agreement document. . . .

In compliance with the Age Discrimination in Employment Act of 1967, [as] amended, this Agreement may be revoked by the Employee at any time within seven days after the date of signing.

(Statement at ¶¶ 14-16)(Emphasis added).

By letter dated April 12, 2002, Mastrianni's attorney requested copies of Bayer's disability plan and summary plan description. (Statement at ¶ 18). The letter closes:

While Mr. Mastrianni would like to accept the severance offered him by Bayer, his disability naturally requires certain modification in the language so that he does not waive or release claims to disability benefits. I hope you or your designee will extend the time period and work with me to clarify the issues surrounding the disability plans. Mr. Mastrianni has authorized me to discuss his claims with you or your designee.

(*Id.*).

By letter dated May 17, 2002, Mastrianni, through a second attorney, once again specifically requested a modification of the Agreement to preserve his disability claim. Specifically, Mastrianni's attorney wrote:

Since Mr. Mastrianni is eligible for disability benefits, we request that the Separation Agreement and General Release b[e] modified to add the phrase "or disability benefit

6

claims" after the reference to "vested pension benefits" in the penultimate line of the fourth bullet point on the first page . . . . I do not believe the agreement is intended to affect vested employee benefits, and in the absence of a specific waiver of particular employee benefits, I do not believe the agreement would have the effect of constituting a waiver of Mr. Mastrianni's right to receive long term disability benefits. Rather than having to litigate this point in the future, we hope we will be able to resolve it now.

(Statement at ¶ 19). Mastrianni's proposed change would have expressly preserved "claims for

vested pension benefits *or disability benefit claims* and claims which cannot legally be waived,

such as for workers' compensation." (*Id.*).

By letter dated May 22, 2002, Bayer, through its counsel, rejected Mastrianni's request to

modify the Agreement. (Statement at ¶ 20). The following day, Mastrianni's attorney again

contacted Bayer to request a modification of the Agreement. (Statement at ¶ 21). The letter

from Mastrianni's attorney provides, in relevant part:

Lastly, please be aware that Mr. Mastrianni has viable wrongful termination claims that he will pursue if we are unable to reach agreement regarding the language of the release. The facts are that Mr. Mastrianni was one of three human resources personnel in the facility at his level, and that Mr. Mastrianni had many more years of varied experience that [sic] the other two. Mr. Mastrianni had been out on a reduced schedule for many months due to a disability, a fact that management of the facility was well aware of. In fact, just a few weeks before his termination, his supervisor interrogated him at length regarding his back condition. It was also known within the facility that he intended to go out on long-term disability. Mr. Mastrianni therefore has a strong case that he was chosen for layoff due to his disability and intent to file for long-term disability benefits, rather than for a legitimate business reason. Mr. Mastrianni therefore has viable claims for disability discrimination and under Section 510 of ERISA to the extent his termination interferes with his ability to obtain disability benefits. If Mr. Mastrianni knows he will be able to pursue his long-term disability claim, he will not pursue these claims, and so is willing to waive them if the change we have requested is made.

The current deadline for returning the release is tomorrow, May 24, 2002. I would ask for another extension of two weeks to return the executed release in order to allow us to resolve any factual disputes, *and to provide sufficient time for Mr. Mastrianni to make a knowing and considered decision regarding the release*, in the event you do not approve the change to the agreement today.

(Statement at ¶ 21)(Emphasis added).

On May 30, 2002, Bayer's attorney sent an email message to Mastrianni's attorney which

expresses Bayer's position with regard to Mastrianni's request for a modification of the Agreement in no uncertain terms:

> Your client's position as explained in your last letter to me has been considered. Nevertheless, *the request that disability benefit claims be carved out from the release must respectfully be denied.*
>
> Because I am a day late in responding to your last letter, you can accept this email as confirmation of a final extension until Monday [June 3, 2002] for Mr. Mastrianni to accept or reject the agreement as initially drafted.

(Statement at ¶ 22)(Emphasis added).   On June 3, 2002, Mastrianni signed the Agreement. (Statement at ¶ 24).

Prior to signing the Agreement, Mastrianni reviewed the terms of the Agreement and Bayer's response to his attorneys' requests for a modification to the Agreement.  (Statement at ¶ 25).  Mastrianni also discussed the effect of the Agreement with his attorney on more than one occasion before signing it.  (*Id.*).  At the time Mastrianni signed the Agreement, he understood that Bayer did not believe he was entitled to LTD benefits. (Statement at ¶ 26).   Mastrianni signed the Agreement knowing that Bayer had refused to modify the language of the Agreement as requested by his attorneys "carving out" coverage for LTD benefits.  (*Id.*).  Nevertheless, on October 1, 2002, over six months after his termination, and almost four months after signing the general release and after having received the benefits for which he was eligible under the severance plan, Mastrianni submitted an application for disability benefits.  (Statement at ¶ 27). When he received no response, Mastrianni initiated this litigation for benefits under Bayer's disability plan.

## Argument

### A.    *Standard of Review*

Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law[,] [while] [a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d (N.Y.) Cir. 2000)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In assessing the record to determine whether genuine issues of material fact are in dispute, a court must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Parkinson v. Cozzolino*, 238 F.3d 145, 150 (2d Cir. (N.Y.) 2001). "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. (N.Y.) 2000), *cert. denied*, 540 U.S. 811 (2003)(quoting *Anderson*, 477 U.S. at 256). However, the non-moving party may not "rest upon . . . mere allegations or denials." *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. (N.Y.) 2000). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vasser Coll.*, 196 F.3d 435, 452 (2d Cir. (N.Y.) 1999), *cert. denied*, 530 U.S. 1242 (2000); *see also Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. (N.Y.) 1998)("If the evidence [presented by the non-moving party] is merely colorable, or is not significantly

9

probative, summary judgment may be granted.")(Internal quotation marks omitted; alteration in original).

### B.    Mastrianni Does Not Have a "Vested" Right to Disability Benefits

Mastrianni asserts the following conclusion of law:  That his "right to receive [LTD] disability benefits vested upon the commencement of his receipt of [STD] benefits in August 2001 [or] in the alternative, . . . when he was certified as totally disabled [effective] March 18, 2002 by the Plan's third party administrator." (First Amended Complaint ¶¶ 16 and 17). Noticeably absent is any reference to a plan document, summary plan description, or any other formal document on which Mastrianni might attempt to establish support for his vesting argument.  Because those very same documents affirmatively establish that the disability benefits here in question were *not* vested, Mastrianni cannot defeat summary judgment based on his vesting argument.

As an initial matter, ERISA makes a clear distinction between two kinds of employee benefits – pension and welfare benefits.  *See* 29 U.S.C. § 1002(1)-(2).  Importantly, while pension benefit plans are subject to mandatory vesting requirements, welfare benefit plans are not.  *See id.* § 1053; *see also Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995). Only the latter are here at issue.

"Under ERISA it is a general rule that an employee welfare benefit plan is not vested and that an employer has the right to terminate or unilaterally to amend the plan at any time." *Schonoloz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 77 (2d Cir. (N.Y.)), *cert. denied*, 519 U.S. 1008 (1996); *see also American Fed'n of Grain Millers, AFL-CIO v. Int'l Multi Foods Corp.*, 116 F.3d 976, 979 (2d Cir. (N.Y.) 1997); *Danis v. Cultor Food Sci., Inc.*, 154 F. Supp. 2d 247, 255 (D. Conn. 2001).  While an employer and employee nevertheless may contract for post-

employment welfare benefits that vest, any alleged promise to provide vested benefits must be incorporated, in some fashion, into the formal written ERISA plan or a document of comparable "formality." *Schonoloz*, 87 F.3d at 77-78; *Danis*, 154 F. Supp. 2d at 256 ("Where an ERISA plan is silent as to vesting or reserves the employer's right to amend or terminate benefits at any time, extrinsic evidence such as 'informal communications between an employer and plan beneficiaries' cannot amend the plan to create a promise of vested benefits 'absent a showing tantamount to proof of fraud.'"). The employee carries the burden of pointing to "specific written language that is reasonably susceptible to interpretation as a promise . . . to vest . . . benefits." *Joyce v. Curtiss-Wright Corp.*, 171 F.3d 130, 134 (2d Cir. (N.Y.) 1999); *American Fed'n of Grain Millers, AFL-CIO*, 116 F.3d at 980; *Danis*, 154 F. Supp. 2d at 256. The issue is one of contract interpretation, which is a question of law. *See, e.g., Adirondack Transit Lines, Inc. v. United Transp. Union, Local 1582*, 305 F.3d 82, 85 (2d Cir. (N.Y.) 2002)(quoting *Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir.2002))("The proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment."); *Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 515 (2d Cir. 2001)("The interpretation of an unambiguous contract – including a release – is also a question of law reserved for the court."); *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir. (N.Y.) 1985) ("'Where the language of the contract is unambiguous, and reasonable persons could not differ as to its meaning, the question of interpretation is one of law to be answered by the court.' . . . The question of whether contract language is clear or ambiguous is to be determined by the court as a matter of law.").

Defendants set forth the relevant provisions of the disability plan above. In addition to retaining a general right to terminate, modify, or amend the plan at any time, both the plan and

the summary plan description specifically address the effect of termination on any claimed right to disability benefits. (Statement at ¶¶ 3 and 8). The Plan states that a person will "remain a Participant until [the earlier of] . . . coverage ceas[ing] under the terms of the Benefit Descriptions [*i.e.,* the summary plan description]" or "the Participant ceas[ing] to be actively employed in an employment status covered by the Plans unless such Participant is on leave under (i) the Family and Medical Leave Act of 1993 or other unpaid leave of absence (up to four months) approved by [the] Employer or (ii) the Short-Term Disability Plan . . . ." (Statement at ¶ 3). The summary plan description for the disability plan states that participation stops "on the last day of actual work" if an employee "leave[s] the company for any reason other than a disability or company-approved unpaid leave of absence . . . ." (Statement at ¶ 4). There is no genuine issue of material fact that Mastrianni was terminated as a result of a reduction-in-force on March 19, 2002. (Statement at ¶ 11). It follows, as a matter of law, that Mastrianni cannot carry his burden of establishing a "vested" right to disability benefits after that date.

### C.    *Mastrianni Knowing and Voluntary Waived His Right to Disability Benefits*

"[T]he validity of a waiver of pension benefits under ERISA is subject to closer scrutiny than a waiver of general contract claims." *Sharkey v. Ultramar Energy Ltd.,* 70 F.3d 226, 231 (2d Cir. (N.Y.) 1995). If, however, in the totality of the circumstances the individual's waiver of his right can be characterized as "knowing and voluntary," then the waiver is nevertheless effective. *Id.* (quoting *Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360, 1364-65, 1367 (2d Cir. (N.Y.) 1991)("Although ERISA is a 'comprehensive and reticulated statute,' . . . we have found no provision . . . generally prohibiting an individual from waiving his right to participate in a pension plan.")). Under *Laniok*, a court should consider the following factors when determining whether a waiver of ERISA claims was made knowingly

12

and voluntarily:

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, [as well as whether an employer encouraged the employee to consult an attorney and whether the employee had a fair opportunity to do so] and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Laniok*, 935 F.2d at 1368 (quoting *Bormann v. AT&T Communications, Inc.*, 875 F.2d 399, 403 (2d Cir. 1989)). The list of factors "is obviously not exhaustive," and the presence or absence of any single factor is not necessarily dispositive. *Id.* ("We emphasize that any attempt to establish a checklist of all applicable factors or to insist on rigid adherence to such a list is foreclosed by the very nature of the inquiry. The essential question is a pragmatic one: whether, in the totality of the circumstances, the individual's waiver of his right can be characterized as 'knowing and voluntary'"); *Bormann*, 875 F.2d at 403 & n.1.

Applying these factors to the present case, it is plain that Mastrianni knowingly and voluntarily waived his claim for disability benefits. Mastrianni was employed by Bayer in a Human Resources function. Indeed, Mastrianni's attorney, in his May 23, 2002 letter to Bayer, characterized Mastrianni as the most experienced Human Resources representative at his level at the facility. (Statement at ¶ 21); *cf. Yablon v. Stroock & Stroock & Lavan Ret. Plan & Trust*, 2002 U.S. Dist. LEXIS 10528 at *15, n.5 (S.D.N.Y. June 12, 2002)("The court notes, however, that Mr. Yablon worked for seven years as an administrative assistant at one of New York's biggest and oldest law firms. . . . It would strain credulity to argue that Mr. Yablon did not acquire *any* legal experience or training during his tenure at the firm."), *aff'd*, 98 Fed. App. 55 (2004) (copy attached at Tab A). He was given significantly more than the 45-day period required by the terms of the Agreement to consider whether to sign it, plus an additional seven

13

days to revoke his signature. (Statement at ¶¶ 15 and 23).

As for the third *Laniok* factor, Mastrianni's role in deciding the terms of the Agreement, Bayer concedes that the Agreement in question was prepared by Bayer. Nevertheless, two separate attorneys representing Mastrianni requested modification of the general release to carve out Mastrianni's intended disability claim, and the second attorney actually proposed language for Bayer's consideration. While those proposals were ultimately rejected by Bayer, counsel for Mastrianni successfully obtained modification of the Agreement in one respect relevant to the second *Laniok* factor. By its express terms, Paragraph 10 of the Agreement provided that Mastrianni's "acceptance of this Agreement will be invalid if it occurs after the passage of more than forty-five (45) days following Employee's initial receipt of the Agreement document." As noted in counsels' letters of April 12, 2002 and May 23, 2002, that period was twice extended, ultimately through June 3, 2002. (Statement at ¶¶ 18, 21 and 23).

Regarding the fourth *Laniok* factor, the Agreement is written in plain English. Moreover, Mastrianni expressly represented in Paragraph 3 not only that he was "given sufficient time to consider whether or not to sign" and that he "has read and understands each and every provision in this Agreement," but also that he was aware that, "by signing this Agreement, he is giving up any right to sue the Company, or to initiate any other legal proceedings against the Company, not only on the basis of the discrimination laws mentioned above, *but for any other claims which he has or believes he has based upon any event which occurred before this Agreement is signed, except claims for vested pension benefits and claims which cannot legally be waived, such as for workers' compensation."* (Statement at ¶ 14)(Emphasis added). Similarly, in Paragraph 5, Mastrianni released both Bayer and its benefit plans "from all liability upon claims of every nature whatsoever," including "claims, known or unknown, which are based upon any act, event

14

or failure to act which occurred before the date on which this Agreement is signed and becomes effective." Noticeably absent from either Paragraph 3 or 5 is any language that would preserve any claims for benefits other than vested pension and workers' compensation benefits. (Statement at ¶ 16).

As for the fifth *Laniok* factor, the documents show that Mastrianni was encouraged by Bayer to consult with counsel; (Statement at ¶ 14); and that he did in fact consult with at least two attorneys before signing the Agreement.   (Statement at ¶¶18-23, 25-26).   The correspondence exchanged demonstrates also that the precise issue here in dispute – whether the Agreement was intended to cover claims for disability benefits – was raised by Mastrianni's counsel and answered in the affirmative by Bayer prior to Mastrianni's signing of the Agreement. (*Id.*).

Finally, as to the last factor, the consideration given in exchange for the release consisted of 26 weeks of salary continuation, the ability to continue designated benefits for the same period of time, and outplacement benefits. (Statement at ¶ 12). Both the Agreement and the severance plan evidence that Mastrianni would not have been entitled to these benefits without signing the release.

In sum, considering all the *Laniok* factors, defendants respectfully submit that the balance falls so overwhelmingly on the side of the defendants that the Court must conclude as a matter of law that Mastrianni knowingly and voluntarily waived his rights under the Agreement. *See Yablon,* 2002 U.S. Dist. LEXIS 10528 at *14-18 ("The court disagrees with plaintiff's contentions and holds that, as a matter of law, the *Laniok* factors establish that Mr. Yablon's waiver was knowingly and voluntarily made."; motion to dismiss granted); *Lambertson v. Kerry Ingredients, Inc.*, 50 F. Supp. 2d 163 (E.D.N.Y. 1999)(motion for judgment on pleadings granted

15

based on knowing and voluntary release); *Gonzalez v. Int'l Bus. Machs. Corp.*, 1997 U.S. Dist. LEXIS 21716 at *3 (E.D.N.Y. Feb. 3, 1997)(same)(copy attached at Tab B). Similarly, there can be no argument but that the plain and unambiguous language of the general release expressly covers the disability claims now being asserted in this action. Having attempted through his counsel to modify the Agreement to his liking, and in the face of Bayer's unequivocal refusal to do so, there is absolutely no genuine issue of material fact but that Mastrianni knew and understood exactly what he would be giving up by signing the Agreement. *Cf. Finz v. Schlesinger*, 957 F.2d 78, 83 (2d Cir. (N.Y.))(upholding waiver of ERISA benefits in part because "there is no question that [plaintiff] knew that he may have been covered under the plan when he relinquished his benefits"), *cert. denied*, 506 U.S. 822 (1992).

**Conclusion**

For the reasons stated above, defendants respectfully request that this Court grant summary judgment in their favor.

Respectfully submitted,

DEFENDANTS
BAYER CORPORATION and BAYER
CORPORATION DISABILITY PLANS

By:    _William J. Albinger_

William J. Albinger, ct19861
Wiggin and Dana LLP
One Century Tower
265 Church Street
New Haven, CT 06510-7001
203.498.4400
203.782.2889 fax

OF COUNSEL:

William J. Klemick, Pa. Bar No. 51688
Bayer Corporate and Business Services LLC
100 Bayer Road
Pittsburgh, PA  15205-9741
(412) 777-8304

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendants' Memorandum of Law in Support of Motion for Summary Judgment was served by U.S. mail, postage pre-paid, this 23rd day of February, 2005, upon the following counsel:

        David S. Rintoul, Esq.
        Brown Paindiris & Scott, LLP
        The Old Town Hall
        2252 Main Street
        Glastonbury, CT 06033

        _William J. Albinger_
        William J. Albinger

\11400\41\512444.1