A

LEXSEE 2002 US DIST LEXIS 10528

ROBERT A. YABLON, as Executor of the Estate of Bennett J. Yablon, individually, and on behalf of all others similarly situated, Plaintiffs,-against-STROOCK & STROOCK & LAVAN RETIREMENT PLAN & TRUST, et al., Defendants.

01 Civ. 452 (CBM)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2002 U.S. Dist. LEXIS 10528; 28 Employee Benefits Cas. (BNA) 2701

June 11, 2002, Decided
June 12, 2002, Filed

**SUBSEQUENT HISTORY:** *Affirmed by Yablon v. Stroock & Stroock & Lavan Ret. Plan & Trust, 2004 U.S. App. LEXIS 6338 (2d Cir. N.Y., Apr. 2, 2004)*

**DISPOSITION:** *1 Defendants' motion to dismiss granted. First amended complaint dismissed in its entirety.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, executor of his brother's estate, sued defendants, the brother's employer, the pension, retirement, and savings plans, trustees, and managers, pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), *29 U.S.C.S. § 1001* et seq. The executor sought to enjoin defendants from failing to pay benefits allegedly required by the pension plans, as well as for other relief. Defendants moved to dismiss.

**OVERVIEW:** When decedent brother left his employment, he entered into a separation agreement which included a release of liability. Defendants asserted that any claims for ERISA benefits were waived by the release. The executor argued that only "contested" claims were waived, any waiver was not knowingly and voluntarily made, and the agreement did not release the plans themselves. The court disagreed with the executor and held that (1) the decedent had constructive knowledge of any claims, (2) the Laniok factors established that his waiver was knowing and voluntary, and (3) under general principles of trust law, releasing all the trustees and/or administrators in their personal and representative capacities also released the plans. Any claims concerning the cessation of contributions, and any claims for the failure to formally amend the retirement plan, accrued when the decedent received notice and were therefore time-barred. The claims for equitable relief were duplicative of other claims, or time-barred. The facts did not support the claims that defendants failed to following a funding policy. Penalties were not available when no colorable claim for benefits existed.

**OUTCOME:** The court granted defendants' motion and dismissed the complaint in its entirety.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
HN1 For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b0(6), the court must accept as true all of the well-pleaded allegations of the complaint.

*Contracts Law > Contract Conditions & Provisions > Waivers*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
HN2 The validity of a waiver of pension benefits under the Employee Retirement Income Security Act of 1974 (ERISA), *29 U.S.C.S. § 1001* et seq., is subject to closer scrutiny than a waiver of general contract claims. However, if in the totality of the circumstances the individual's waiver of his right can be characterized as "knowing and voluntary," then the waiver is nevertheless effective. A court should consider the following factors when determining whether a waiver of ERISA claims was made knowingly and voluntarily: 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted

Case 3:02-cv-02261-CFD   Document 39-2   Filed 02/23/2005   Page 3 of 13

Page 2

2002 U.S. Dist. LEXIS 10528, *1; 28 Employee Benefits Cas. (BNA) 2701

with an attorney, as well as whether an employer encouraged the employee to consult an attorney and whether the employee had a fair opportunity to do so, and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
*Estate, Gift & Trust Law > Trusts > Beneficiaries*
HN3 Under principles of trust law, beneficiaries or third-parties with claims against a trust can normally reach the trust res only by filing a suit against the trustee in his or her representative capacity. However, the Employee Retirement Income Security Act of 1974 (ERISA), *29 U.S.C.S. § 1001* et seq., does provide for suits directly against a plan. *29 U.S.C.S. § 1132(d)(1).* In addition to an action against the plan, ERISA permits recovery against employers, insurers, and administrators who acted as fiduciaries.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
HN4 In New York, a claim for benefits under *29 U.S.C.S. § 1132(a)(1)(B)*, § 502(a)(1)(B) of the Employee Retirement Income Security Act, *29 U.S.C.S. § 1001* et seq., is subject to a six-year statute of limitations. *N.Y. C.P.L.R. § 213.* As for when the statute begins to run, according to the United States Court of Appeals for the Second Circuit, a plaintiff's cause of action accrues upon a clear repudiation that is known, or should be known, to the plaintiff.

*Governments > Legislation > Statutes of Limitations > Statutes of Limitations Generally*
HN5 According to the United States Court of Appeals for the Second Circuit, a statute of limitations inquiry is not one of formality; rather, it is one of notice of injury.

*Governments > Legislation > Statutes of Limitations > Statutes of Limitations Generally*
HN6 A plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
HN7 *29 U.S.C.S § 1132(a)(3),* § 502(a)(3) of Employee Retirement Income Security Act of 1974, *29 U.S.C.S. § 1001* et seq., provides equitable relief only for violations that § 502 does not elsewhere adequately remedy. The court interprets this to mean that plaintiffs may not seek the same relief under *29 U.S.C.S. § 1132(a)(3)* as they are seeking under *29 U.S.C.S. § 1132(a)(1)(B).*

**COUNSEL:** For Plaintiff: Albert Feuer, Esq., Law Office of Albert Feuer, Forest Hills, NY.

For Plaintiff: David Preminger, Esq., Rosen, Preminger & Bloom, New York, NY.

For Defendants: William F. Hanrahan, Esq., Michael J. Prame, Esq., Groom Law Group, Chartered, Washington, DC.

For Defendants: Alan M. Klinger, Esq., Mark S. Wintner, Esq., Stroock & Stroock & Lavan LLP, New York, NY.

**JUDGES:** CONSTANCE BAKER MOTLEY, United States District Judge.

**OPINIONBY:** CONSTANCE BAKER MOTLEY

**OPINION:**

### MEMORANDUM OPINION & ORDER
### MEMORANDUM OPINION AND ORDER

### INTRODUCTION

This putative class action is brought by plaintiff Robert Yablon pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), *29 U.S.C. § 1001* et seq. Plaintiff seeks to enjoin defendants from failing to pay certain benefits as allegedly required by defendants' pension plans, as well as declaratory, equitable and remedial relief. In lieu of an answer, defendants have filed a motion to dismiss pursuant to *Rule 12(b)(6) of the Federal* *2 *Rules of Civil Procedure.* For the reasons stated in this memorandum opinion and order, defendants' motion will be granted and the case dismissed.

### The Parties

Plaintiff Robert Yablon is the executor of the estate of his deceased brother, Bennett Yablon, who died in May 1998. n1 Bennett Yablon was employed by the law firm of Stroock & Stroock & Lavan (the "Firm") as an administrative assistant from February 1989 through October 10, 1996.

   n1 As used herein, the term "plaintiff" shall refer to Robert and "Mr. Yablon" shall refer to

Case 3:02-cv-02261-CFD    Document 39-2    Filed 02/23/2005    Page 4 of 13

Page 3

2002 U.S. Dist. LEXIS 10528, *2; 28 Employee Benefits Cas. (BNA) 2701

Bennett.

The defendants are the Firm, its Pension Plan for Staff Employees (the "Pension Plan"), its Retirement Plan and Trust (the "Retirement Plan"), its Savings and Investment Plan and Trust (the "Savings Plan"), the trustees of all three "Plans" (individually and in their official capacities), and the investment managers of all three Plans.

**Factual and Procedural Background**

HN1 For purposes of this motion to dismiss, the court must accept as true all of the well-pleaded *3 allegations of the First Amended Complaint. The following recitation of the facts has therefore been gleaned from the First Amended Complaint and documents incorporated therein by reference. n2

> n2 Because the First Amended Complaint incorporates by reference several documents, and since plaintiff's claims are premised on what is contained in those documents, the court may consider them in deciding the motion to dismiss. See *Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999); *Int'l Audiotext Network, Inc. v. AT&T,* 62 F.3d 69, 72 (2d Cir. 1995).

Mr. Yablon was employed by the Firm from February 1989 through October 1996. Mr. Yablon was not a lawyer; he was employed as an administrative assistant. During his time at the Firm, he participated in all three Plans. The Firm is the plan administrator for each of the Plans.

The Pension Plan, created in December 1984, was a defined benefit plan. It was terminated in September 1993 and integrated with the *4 Retirement Plan, which is a defined contribution plan. The firm stopped making contributions to the Retirement Plan in December 1991 because of the adoption of the Savings Plan. The Retirement Plan was merged with the Savings Plan in September 1993.

As for Mr. Yablon's participation in the Plans, in a notice dated November 26, 1991, the Firm informed Mr. Yablon that, as a result of the creation of the Savings Plan, the Firm was discontinuing the Pension Plan effective December 31, 1991. The notice stated that any accrued benefits under the Pension Plan would be "frozen" at their value as of December 31, 1991. This freeze was effected by the execution of "Amendment 2" to the Pension Plan. The Pension Plan was subsequently terminated in September 1993 and all of the Pension Plan's assets were distributed to Mr. Yablon and the other Pension Plan participants on February 29, 1996.

The November 26, 1991, notice also informed Mr. Yablon that, with regard to the Retirement Plan, contributions by the Firm would be discontinued after December 31, 1991, but that his amount on balance would be held in Trust until his retirement, death, or termination. Despite this notice, the Firm never actually *5 amended the Retirement Plan in accordance with the terms of the Plan.

Mr. Yablon's employment with the Firm ended on October 10, 1996. On or about that date, he signed a separation agreement (the "Agreement") and filed an application for his benefits under the Savings Plan. He asked that his benefits be rolled over into an IRA. The Firm paid those benefits ($ 53,758.24) on December 10, 1996, at their value as of October 31, 1996. The Agreement contained provisions purporting to release defendants from any liability for any claims arising under ERISA.

Mr. Yablon died in May 1998. After Mr. Yablon's death, plaintiff, the executor of Mr. Yablon's estate, and his representative made numerous attempts to obtain information regarding Mr. Yablon's participation in the Plans. Plaintiff made several and extensive information requests to the Plans, including repeated requests for amendment(s), if any, terminating the Firm's post-1991 contribution obligations to the Retirement Plan, funding policies and statements of investment policy for the Retirement Plan and the Savings Plan.

On September 30, 1999, plaintiff filed a formal benefit claim with each of the Plans. The claims were denied November 10, 1999. An *6 appeal was timely filed on January 10, 2000. The plans rejected the appeal on March 11, 2000. This litigation ensued on January 19, 2001. Plaintiff filed his complaint on January 19, 2001. In May 2001 Judge Wood ordered defendants to produce documents to which plaintiff was entitled under ERISA. Plaintiff then filed an amended complaint on July 20, 2001. The case was transferred to the undersigned on June 11, 2001.

**The Claims**

The First Amended Complaint lists twelve different causes of action:

> (1) That since the Retirement Plan was never properly amended to eliminate the requirement that the Firm contribute to the Retirement Plan, plaintiff is entitled to those

Case 3:02-cv-02261-CFD    Document 39-2    Filed 02/23/2005    Page 5 of 13

Page 4
2002 U.S. Dist. LEXIS 10528, *6; 28 Employee Benefits Cas. (BNA) 2701

contributions pursuant to ERISA §§ 204(g), 402(a)(1), and 502(a)(1)(B), *29 U.S.C.* §§ *1054*(g), 1102(a)(1), and 1132(a)(1)(B).

(2) That pursuant to ERISA § 502(a)(3), *29 U.S.C.* § *1132*(a)(3), Mr. Yablon was entitled to have his December 1996 rollover to his IRA based on the November 30, 1996, balances rather than the smaller October 31, 1996, balances.

(3) That pursuant to ERISA § 502(a)(3), *29 U.S.C.* § *1132*(a)(3), plaintiff is *7 entitled to foregone interest and earnings on the contributions that should have been made to the Retirement Plan and the Savings Plan on Mr. Yablon's behalf.

(4) That pursuant to ERISA § 502(a)(1)(B), *29 U.S.C.* § *1132*(a)(1)(B), plaintiff is entitled (1) to a declaration of his rights under the Retirement Plan and (2) a declaration of his rights to current or future benefits from each of the plans.

(5) That pursuant to ERISA § 502(a)(3), *29 U.S.C.* § *1132*(a)(3), plaintiff is entitled to seek equitable relief from the Firm on behalf of the Plans themselves.

(6) That the boards of the Plans, the individual trustees of the Plans, and the Plans' investment managers breached their fiduciary duties in failing to (1) establish and follow a funding policy as required by ERISA § 402(b)(1), *29 U.S.C.* § *1102*(b)(1); (2) establish and follow a statement of investment policy as required by *29 C.F.R.* § *2509.94-2*; and (3) invest the assets of those plans prudently as required by ERISA § 404(a)(1), *29 U.S.C.* § *1104*(a)(1).

(7) That the lump sum benefits *8 paid to the Pension Plan participants on February 29, 1996, were calculated using wrong interest rates and that under ERISA §§ 204(g) – (h), 402(a)(1), *29 U.S.C.* §§ *1054*(g) – (h), 1102(a)(1), plaintiff is entitled to the difference.

(8) That the lump sum benefits paid to the Pension Plan participants on February 29, 1996, were calculated using a wrong methodology, and that under ERISA §§ 204(g) – (h), 402(a)(1), *29 U.S.C.* §§ *1054*(g) – (h), 1102(a)(1), plaintiff is entitled to the difference.

(9) That pursuant to ERISA § 502(a)(3), *29 U.S.C.* § *1132*(a)(3), plaintiff is entitled on foregone interest and earnings on the additional Pension Plan amounts to which Mr. Yablon was entitled.

(10) That pursuant to ERISA § 502(a)(1)(B), *29 U.S.C.* § *1132*(a)(1)(B), plaintiff is entitled to a declaration of his rights under the Pension Plan.

(11) That pursuant to ERISA § 502(c)(1), *29 U.S.C.* § *1132*(c)(1), plaintiff is entitled to penalties of $110.00 for each day over thirty days that it took the Retirement Plan administrator (i.e., the Firm) to respond to his *9 request for a copy of the amendment terminating employer contributions to the Retirement Plan.

(12) That pursuant to ERISA § 502(c)(1), *29 U.S.C.* § *1132*(c)(1) the administrators of the Retirement Plan, the Savings Plan, and the Pension Plan should each be assessed penalties for failing to provide certain documents within thirty days of plaintiff's request.

## DISCUSSION

**The Separation Agreement and Release of Liability**

When Mr. Yablon left the Firm in October 1996, he entered into a separation agreement with the Firm which provided in paragraph 5:

> In consideration of the payments and benefits set forth in paragraph 4, n3 you for yourself and your heirs and assigns, hereby voluntarily, knowingly and irrevocably release and forever discharge the Firm, its predecessors, successors and assigns and their respective present, former, and future partners, of counsel, special counsel, associates, agents or employees, in both their individual and representative capacities, (collectively, the "Released Parties") from all actions, claims, demands, causes of action, obligations, damages, liabilities, expenses and controversies of any nature and *10 description whatsoever, whether

Case 3:02-cv-02261-CFD   Document 39-2   Filed 02/23/2005   Page 6 of 13

Page 5

2002 U.S. Dist. LEXIS 10528, *10; 28 Employee Benefits Cas. (BNA) 2701

or not now known, suspected or claimed, which you had, have, or may have, against the Released Parties from the beginning of time up to and including the date you sign this Agreement, including, without limitation, all actions, claims, demands, causes of action, obligations, damages, liabilities, expenses and controversies of any kind which arise out of, relate to or are based on (i) your employment with the Firm or the termination therefrom, . . . . (iv) any federal, state or local fair employment practices or civil rights law including . . . . the Employee Retirement Income Security Act of 1974, . . . or (v) any claim for wages, commissions, bonuses, accrued vacation pay, employee benefits, expenses, allowances and any other payment or compensation of any kind whatsoever.

Defs.' Ex. D P 5. Paragraph 7 of the agreement advised Mr. Yablon to seek the advice of an attorney and gave him a week after signing to change his mind:

Since this Agreement affects your legal rights, you are advised to consult an attorney before signing this Agreement and you will have the opportunity to review the terms of this Agreement for at least 45 days. This Agreement *11 shall not become effective until the eighth day following your signing of this Agreement and you may at any time prior to the effective date revoke this Agreement by sending via overnight mail or hand delivery written notice of such revocation to the Director of Human Resources and Administrative Services.

Id. P 7. The Agreement was dated October 10, 1996. n4

n3 Paragraph 4 provided that "upon this letter agreement being signed by you and becoming effective as provided in paragraphs 7 and 10, the Firm will pay (a) you the sum of $4,392.00, less customary deductions and (b) your individual medical benefit continuation for two months." Defs.' Ex. D. P 4.

n4 The date Mr. Yablon actually executed the Agreement is open to interpretation. The pre-printed signature box on the Agreement includes the pro forma language "Voluntarily Agreed to and Accepted this    day of    1996." Mr. Yablon wrote the number 10 in the first blank and 12 in the second, which would seem to indicate a date of execution of December 12, 1996. However, a date of October 12, 1996, would be more consistent with the date printed at the top of the Agreement. In any event, whether Mr. Yablon signed the Agreement in December or October has little bearing on the instant motion. What matters is that Mr. Yablon *did* sign the Agreement — a fact that is uncontested.

*12

Defendants argue that plaintiff's claims for employee benefits were effectively waived by the broad release contained in the Agreement. Plaintiff responds first by arguing that only "contested" benefits claims can be effectively waived. Next, plaintiff argues that Mr. Yablon's did not knowingly and voluntarily waive his rights. Finally, in the alternative, plaintiff argues that the Agreement did not release the Plans themselves.

Relying on a Seventh Circuit case, *Lynn v. CSX Transportation Inc.*, *84 F.3d 970, 975 (7th Cir. 1996)*, plaintiff argues that only "contested" claims may be waived through a release such as that contained in the Agreement. Since Mr. Yablon never "contested" his employee benefits, the argument goes, his purported release of claims is ineffective. Plaintiff, however, is unable to point to any Second Circuit case law which would support such a proposition. Even assuming that Lynn were controlling in the instant matter, the court in Lynn made clear that waivable claims need not have been actually contested; rather, they need only have been "constructively" contested — i.e, "the claims could have been contested and resolved at the time *13 the release was entered into." Id. In the instant case, the Firm distributed to Mr. Yablon a notice informing him that the Firm was discontinuing contributions to the Retirement Plan. See 1st Am. Compl. P 78; Defs.' Ex. E. As for the Pension Plan claims, Mr. Yablon elected to have his Pension Plan benefits distributed to him in the form of a lump sum payment in 1991. Since he was notified of the amount of his benefits and accepted them without question, see 1st Am. Compl. PP 77-82, Mr. Yablon had constructive knowledge of any claims he may have had regarding their calculation. Thus, even assuming the applicability of Lynn, the claims were "constructively contested" and subject to waiver.

Next, plaintiff argues that the claims were not "knowingly and voluntarily" waived. The court agrees with plaintiff that HN2 "the validity of a waiver of pension benefits under ERISA is subject to closer scrutiny than a waiver of general contract claims." *Sharkey v. Ultramar Energy Ltd.*, *70 F.3d 226, 231 (2d Cir. 1995)*. However, if in the totality of the circumstances the in-

Case 3:02-cv-02261-CFD    Document 39-2    Filed 02/23/2005    Page 7 of 13

Page 6

2002 U.S. Dist. LEXIS 10528, *13; 28 Employee Benefits Cas. (BNA) 2701

dividual's waiver of his right can be characterized as "knowing and voluntary," then the waiver *14 is nevertheless effective. Id. (quoting *Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan, 935 F.2d 1360, 1367 (2d Cir. 1991)*. Under Laniok, a court should consider the following factors when determining whether a waiver of ERISA claims was made knowingly and voluntarily:

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, as well as whether an employer encouraged the employee to consult an attorney and whether the employee had a fair opportunity to do so and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Laniok, 935 F.2d at 1368* (modification in original) (quoting *Bormann v. AT&T Communcations, Inc., 875 F.2d 399, 403 (2d Cir. 1989))*. This list of factors "is obviously not exhaustive," and the presence or absence of any single *15 factor is not necessarily dispositive. Id.

Plaintiff contends that the Laniok factors render the purported release ineffective. In particular, plaintiff contends that "there was no showing that (1) Mr. Yablon had sufficient opportunity to negotiate the terms of the waiver or to consult an attorney; (2) he received any amount in exchange for the waiver; or (3) that he had a clear idea of what he was giving up." Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss the Compl. at 10-11. The court disagrees with plaintiff's contentions and holds that, as a matter of law, the Laniok factors establish that Mr. Yablon's waiver was knowingly and voluntarily made.

As for the first factor, Mr. Yablon's education and business experience, the court must accept as true plaintiff's allegations that Mr. Yablon "never received any legal, financial or employee benefits training prior to or during his employment with the Firm," and that his position at the Firm "did not require any legal, financial or employee benefits expertise." n5 1st Am. Compl. PP 27, 28. As for the second factor, however, by the express terms of paragraph 7 of the Agreement, Mr. Yablon had forty-five days to consider *16 the terms of the release and review it with counsel. Indeed, Mr. Yablon was explicitly encouraged to consult an attorney. Moreover, Mr. Yablon was given an eight-day window period in which he could effectively revoke the release after its execution. See Defs.' Ex. D. P 7.

> n5 The court notes, however, that Mr. Yablon worked for seven years as an administrative assistant at one of New York's biggest and oldest law firms. See 1st Am. Compl. P 26. It would strain credulity to argue that Mr. Yablon did not acquire *any* legal experience or training during his tenure at the firm. For purposes of this motion, however, the court will assume he did not.

As for the third Laniok factor, the role Mr. Yablon played in the drafting of the Agreement, there is no allegation in the complaint directly on point. Paragraph 33 of the complaint does allege, however, that a dozen employees of the Firm were given and executed separation agreements at about the same time as Mr. Yablon and that "each of these separation *17 agreements contained virtually the same language" as Mr. Yablon's. 1st Am. Compl. PP 33. This would seem to imply that Mr. Yablon had little to say about the terms of the Agreement. It does not, however, preclude the possibility that Mr. Yablon negotiated the terms of his own Agreement, and plaintiff does not allege that Mr. Yablon did not have the opportunity to do so.

As for the fourth Laniok factor, the Agreement is written in plain English, is only two pages long, and the final numbered paragraph states that "you acknowledge that you have read this Agreement in its entirety and understand all of its terms, including that it constitutes a complete waiver and general release of all claims . . . ." Defs.' Ex. D. P 10. An indicated above, paragraph 5 explicitly references ERISA and employment benefits as categories of claims which Mr. Yablon was releasing.

As for the fifth Laniok factor, plaintiff alleges that Mr. Yablon "did not consult an attorney before signing the Separation Agreement." 1st Am. Compl. PP 30. However, the plain language of the Agreement itself makes clear that the Firm encouraged Mr. Yablon to consult an attorney and that the Firm gave him a significant *18 period of time in which to do so. See Defs.' Ex. D. P 7.

Finally, as for the sixth Laniok factor, the consideration given in exchange for the release consisted of $4,392.00 and extended medical benefits, neither of which, according to the Agreement, Mr. Yablon would have otherwise been entitled. See Defs.' Ex. D. PP 4,

Case 3:02-cv-02261-CFD   Document 39-2   Filed 02/23/2005   Page 8 of 13

Page 7

2002 U.S. Dist. LEXIS 10528, *18; 28 Employee Benefits Cas. (BNA) 2701

10. The complaint fails to allege that plaintiff is entitled to any specific amount in excess of this consideration.

Considering all the Laniok factors, the court can only conclude that the balance falls definitively on the side of a knowing and voluntary waiver. The only factor that unequivocally supports plaintiff's position is the first Laniok factor, and as indicated in footnote 5, supra, the court has serious doubts about the allegations undergirding that factor. All the other factors are either neutral or weigh in defendants' favor to varying degrees.

Having determined that the release was made voluntarily and knowingly, the court must next determine which defendants were effectively released. The language of the Agreement is quite broad and releases "the Firm, its predecessors, successors and assigns and their respective present, former, *19 and future partners, of counsel, special counsel, associates, agents or employees, in both their individual and representative capacities" from any claims Mr. Yablon may have had. Defs.' Ex. D. P 5. This release would seem to cover all of the named defendants save the Plans themselves. In an effort to cover the Plans, defendants argue that, "in addition to releasing the Firm, the separation agreement released (1) the Firm's partners who, as members of the Plans' Board of Trustees, were representatives of the respective Plans; (2) the Firm in its representative capacity as administrator of the Plans; and, as a result, (3) the Plans themselves." Defs.' Mem. of Law in Supp. of Defs.' Mot. to Dismiss at 12. In support of this proposition, defendants point to a footnote in *Barnett v. IBM Corp., 885 F. Supp. 581 (S.D.N.Y. 1995)*, in which the district court judge wrote in dicta, "a suit against trustees or administrators of a plan in their official capacity is equivalent to a suit against a plan." *Id. at 592 n.15.*

HN3 Under principles of trust law, beneficiaries or third-parties with claims against a trust can normally reach the trust *res* only by filing *20 a suit against the trustee in his or her representative capacity. See *Restatement (Second) of Trusts § 199* (Equitable Remedies of Beneficiary) (1959); id § 267 (Reaching Trust Property by a Suit in Equity). ERISA does, however, provide for suits directly against a plan. See ERISA § 502(d)(1), *29 U.S.C. § 1132(d)(1)* ("An employee benefit plan may sue or be sued under this subchapter as an entity."); see e.g., *Frank C. Gaides, Inc. v. Provident Life & Accident Ins. Co., No. 95 Civ. 1273, 1996 WL 497085, at *2 (E.D.N.Y. Aug. 26,1996)* ("In addition to an action against the Plan, ERISA permits recovery against employers, insurers, and administrators who acted as fiduciaries."). The question is, then, does releasing the trustees and/or administrators of a plan also release the plan itself? With apparently no case law directly on point, the court is inclined to agree with defendants (and, implicitly, Barnett) that general principles of trust law should govern here. Since the separation agreement released the named defendants in their representative as well as individual capacities, the Agreement effectively released the Plans themselves. *21

Therefore, as a result of the release contained in Mr. Yablon's separation agreement, Counts One, Three, Five, Seven, Eight and Nine of the First Amended Complaint must be dismissed as to all defendants. n6

> n6 Since the court is dismissing Counts Seven and Eight as a result of the releases contained in Mr. Yablon's separation agreement, it need not consider defendants' arguments that the counts should be dismissed on the merits.

### The Statute of Limitations

HN4 In New York, a claim for benefits under section 502(a)(1)(B) of ERISA, *29 U.S.C. § 1132(a)(1)(B)*, is subject to a six-year statute of limitations. See *N.Y. C.P.L.R. § 213*; *Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan, 201 F.3d 44, 46-47 (2d Cir. 1999)*; *Miles v. N.Y. State Teamsters Conference Pension & Ret. Fund Employee Pension Benefit Plan, 698 F.2d 593, 598 (2d Cir. 1983)*. As for when the statute begins to run, the Second Circuit has indicated that "a plaintiff's cause *22 of action accrues upon a clear repudiation that is known, or should be known, to the plaintiff." *Carey, 201 F.3d at 47-48.*

In the instant case, the Firm in November 1991 sent Mr. Yablon a notice informing him of the adoption of the Savings Plan and the resulting changes to the Retirement Plan and the Pension Plan. See 1st Am. Compl. P 78; Defs.' Ex. E. That notice specifically informed Mr. Yablon that, as of January 1, 1992, the Firm was "discontinuing contributions to the Retirement Plan." Defs.' Ex. E(1) at 1. Two pages later, the Firm reiterated that ""contributions to the Retirement Plan will be discontinued after December 31, 1991." Id. at 3.

Defendants argue that any cause of action Mr. Yablon may have had concerning the cessation of contributions accrued at the date of the distribution of that notice. Plaintiff argues that since the Plan was never *formally* amended, the statute should not begin to run until plaintiff had exhausted his administrative remedies in March 2000.

HN5 The Second Circuit in Carey made clear that the inquiry is not one of formality; rather, it is one of no-

Case 3:02-cv-02261-CFD    Document 39-2    Filed 02/23/2005    Page 9 of 13

Page 8

2002 U.S. Dist. LEXIS 10528, *22; 28 Employee Benefits Cas. (BNA) 2701

tice of injury. See *Carey 201 F.3d at 47-48.* **\*23** As an initial matter, the instant court is hard-pressed to identify an "injury" with regard to this particular claim. The Firm had the authority to cease contributions to the Retirement Plan, Mr. Yablon received notice that the Firm would no longer contribute to the Retirement Plan, Mr. Yablon did not object to the discontinuation, and up until his death, Mr. Yablon apparently never expected any more contributions by the Firm to the Retirement Plan. Only now, after Mr. Yablon's death, has the Executor of Mr. Yablon's estate purportedly "discovered" an injury.

What is not entirely clear from plaintiff's arguments is the nature of the injury. If the cessation of contributions was the "injury," then Carey is crystal clear: the cause of action accrued at the time of repudiation, which in the instant case was the date of the November 1991 notice. Id.

Likewise, if the purported "injury" was the Firm's failure to formally amend the Retirement Plan, the statute of limitations began to accrue at the same time. In November 1991, after receiving the notice of amendment, Mr. Yablon, rather than ask to see the amended Retirement Plan, chose to rely solely on the notice he received. The **\*24** clock started ticking at that point. See *id. at 48* HN6 ("A plaintiff's cause of action accrues when he discovers, or *with due diligence should have discovered,* the injury that is the basis of the litigation.") (emphasis added).

Finally, plaintiff is not entitled to the benefits of equitable tolling on this issue. The complaint contains no allegation of "affirmative misconduct" intended to "lull the plaintiff into inaction." *South v. Saab Cars USA, Inc., 28 F.3d 9, 11 (2d Cir. 1994).* Moreover, as indicated above, the court is not convinced that Mr. Yablon exercised the requisite due diligence to merit equitable tolling. See *State of N.Y. v. Hendrickson Bros., Inc., 840 F.2d 1065, 1083 (2d Cir. 1988).*

In brief, plaintiff's interpretation of the statute of limitations is no limitation at all. Under plaintiff's theory, he could have initiated this litigation in the year 2050. Such a theory turns the whole concept of a statute of limitations on its head. Counts One and Three must therefore be dismissed as to all defendants.

**Plaintiff's Equitable Claims Under Section 502(a)(3)**

In Count Five, plaintiff invokes section 502(a)(3) **\*25** of ERISA, *29 U.S.C. § 1132*(a)(3), to pursue relief "on behalf of the respective Plans" and recover from the Firm the contributions (plus interest) that plaintiff claims the Firm should have made to the Retirement Plan after 1991. 1st Am. Compl. PP 125-27. This is precisely the same relief sought in Counts One and Three. See id. PP 114-17, 121-22. HN7 Subsection (a)(3), however, provides equitable relief only for "violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe, 516 U.S. 489, 512, 134 L. Ed. 2d 130, 116 S. Ct. 1065 (1996);* see *Fitch v. Chase Manhattan Bank, N.A., 64 F. Supp. 2d 212, 229 (W.D.N.Y. 1999)* ("The Court interprets this to mean that plaintiffs may not seek the same relief under *29 U.S.C. § 1132*(a)(3) as they are seeking under *29 U.S.C. § 1132*(a)(1)(B)."). Since Count Five is thus duplicative, it must be dismissed as to all defendants.

In the alternative, even if plaintiff could maintain a claim under section 502(a)(3), the applicable three-year statute of limitations provided for by ERISA is even shorter than the six-year one detailed **\*26** above. See ERISA § 413, *29 U.S.C. § 1113*. Count Five is therefore also dismissed as to all defendants on statute of limitations grounds.

Plaintiff also invokes section 502(a)(3) in Count Two, claiming that Mr. Yablon "was entitled to have his December 1996 distribution from the Savings Plan, including his Retirement Plan accounts, based upon his November 30, 1996 account balances, rather than the smaller October 31, 1996 balance used by the two Plans." 1st Am. Compl. P 119. Plaintiff, however, does not indicate why Mr. Yablon was so entitled. The complaint does not identify any provision of the plans or any provision of ERISA's Title 1 that required defendants to value Mr. Yablon's account balance in the Savings Plan as of November 30, 1996, instead of October 31, 1996. The terms of the plan provide that a terminated employee's accounts are to be *valued* at the end of the month in which the Firm, serving as the plan's administrator, receives a request for a distribution. See Defs.' Ex. C, Art. 6.01(b). The Plan, however, is silent as to *distribution.* The benefits were distributed to Mr. Yablon within forty days of the valuation date. **\*27** See 1st Am. Compl. PP 38-39. As a matter of law, such a delay is not unreasonable. See, e.g., *Clair v. Harris Trust & Sav. Bank, 190 F.3d 495, 499 (7th Cir. 1999);* 29 C.F.R. § 1.401(a)-20, A-3(b)(1). Since the relief sought by plaintiff was not available to Mr. Yablon under the terms of the plan or under ERISA, Count Two must be dismissed as to all defendants. See *Mertens v. Hewitt Assocs., 508 U.S. 248, 253, 124 L. Ed. 2d 161, 113 S. Ct. 2063 (1993).*

**The Funding and Investment Policies**

In Count Six plaintiff asserts that the trustees of the Retirement Plan and the Savings Plan breached their fiduciary duty by failing to establish and follow a fund-

Case 3:02-cv-02261-CFD     Document 39-2     Filed 02/23/2005     Page 10 of 13

Page 9

2002 U.S. Dist. LEXIS 10528, *27; 28 Employee Benefits Cas. (BNA) 2701

ing policy pursuant to section 402(b)(1) of ERISA, *29 U.S.C. § 1102(b)(1)*, and by failing to establish and follow a statement of investment policy pursuant to *29 C.F.R. § 2509.94-2*. As defendants point out, an examination of both plans makes clear that funding policies and investment policies were established and in place at all relevant periods. See Defs.' Exs. B, C. Plaintiff has also failed to allege *28 any facts that would provide a basis for concluding that the funding and investment policies were not followed. Count Six must therefore be dismissed as to all defendants.

**Statutory Penalties and the Request for Declaratory Relief**

In Counts Eleven and Twelve, plaintiff seeks to have penalties assessed against defendants for failure to provide plan documents within thirty days of his making a request for them. See ERISA § 502(c)(1), *29 U.S.C. § 1132(c)(1)*. However, a plaintiff is entitled to these penalties only if he or she has a colorable claim for benefits. Since all of plaintiff's substantive claims must be dismissed, plaintiff cannot be said to have had any "colorable" claims, and Counts Eleven and Twelve must therefore be dismissed as well.

Likewise, since all of plaintiff's substantive claims have been dismissed, Counts Four, Six, and Ten, in which plaintiff seeks declaratory relief based on those claims must also be dismissed.

**CONCLUSION**

For the foregoing reasons, the court hereby **GRANTS** defendants' motion, and the First Amended Complaint is **DISMISSED** in its entirety.

**SO ORDERED.**

Dated: June 11, *29 2002

New York, New York

CONSTANCE BAKER MOTLEY

United States District Judge

B

LEXSEE 1997 US DIST LEXIS 21716

WILFREDO GONZALEZ, Plaintiff, v. INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant.

No. CV-93-1254

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

1997 U.S. Dist. LEXIS 21716

February 3, 1997, Decided
February 4, 1997, Filed

**DISPOSITION:** *1 Defendant's motion for judgment on the pleadings granted as to plaintiff's claims.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant's motion for judgment on the pleadings in plaintiff's Title VII case was referred to a magistrate for a report and recommendation. The magistrate recommended that that the motion be granted and that the court exercise the discretion granted it in 28 U.S.C.S. § 1367(c)(3) and decline to exercise jurisdiction over defendant's counterclaim for costs and attorney fees. Defendant objected to the recommendation relating to its counterclaim.

**OVERVIEW:** The parties entered a release agreement. The court ruled that defendant was entitled to judgment on the pleadings because plaintiff knowingly and voluntarily entered into a valid release agreement with defendant, which precluded his Title VII claims. The court rejected the recommendation that it decline to exercise jurisdiction over defendant's counterclaim because the interests of judicial economy required that the matter fully be resolved in the instant forum. Therefore, the court exercised its discretionary jurisdiction, pursuant to § 1367(c)(3), over defendant's pendent state law counterclaim for costs and attorney fees. Because the court had already determined that the release agreement was valid and binding, that agreement was enforceable as to its fee-shifting provision. Because that provision required plaintiff to pay all costs and expenses of defending actions in violation of the release, including reasonable attorney fees, and because plaintiff had breached the agreement by bringing the instant action, defendant was entitled to a determination of the amount of attorney fees that were "reasonable" under the circumstances.

**OUTCOME:** The court granted defendant's motion for judgment on the pleadings as to plaintiff's claims and with respect to defendant's counterclaim as well.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction*
HN1 Having dismissed all claims over which it has original jurisdiction, a district court has discretion under 28 U.S.C.S. § 1367(c)(3) to decline to exercise jurisdiction over compulsory counterclaim for attorney fees.

**COUNSEL:** WILFREDO GONZALEZ, plaintiff, Pro se, Brooklyn, NY.

For IBM, defendant: Cheryl R. Saban, Esq., New York, NY.

For IBM, counter-claimant: Cheryl R. Saban, Esq., New York, NY.

WILFREDO GONZALEZ, counter-defendant, Pro se, Brooklyn, NY.

**JUDGES:** RAYMOND J. DEARIE, United States District Judge.

**OPINIONBY:** RAYMOND J. DEARIE

**OPINION:**

MEMORANDUM & ORDER

DEARIE, District Judge.

By Order dated April 19, 1993, this Court referred defendant's motion for judgment on the pleadings to Magistrate Judge Marilyn Dolan Go for a report and recommendation pursuant to *28 U.S.C. § 636*(b)(1)(B).

Magistrate Judge Go's Report and Recommendation (the "R&R") was issued on December 23, 1996.

For the reasons stated in the R&R, this Court finds that plaintiff knowingly and voluntarily entered into a valid release agreement with defendant which precludes the Title VII claims asserted herein. Defendant's motion for judgment on the pleadings is therefore granted as to plaintiff's claims.

The Magistrate Judge has further recommended that this Court exercise the discretion granted it in *28 U.S.C. § 1367*(c)(3), and decline to exercise jurisdiction over defendant's counterclaim for costs and attorney fees. See *Frumkin v. International Bus. Mach. Corp., 801 F. Supp. 1029, 1044-45 (S.D.N.Y. 1992)* (McKenna, J.) ( HN1 having dismissed all claims over which it has original *2 jurisdiction, district court has discretion under *28 U.S.C. § 1367*(c)(3) to decline to exercise jurisdiction over compulsory counterclaim for attorney fees). In the alternative, the Magistrate Judge recommends that the Court award defendant the sum of one dollar on its counterclaim. Defendant has objected to that portion of the R&R which relates to its counterclaim.

While declining to exercise jurisdiction is a tempting alternative, the Court is persuaded that the interests of judicial economy require that this matter fully be resolved in this forum. Therefore, the Court will exercise its discretionary jurisdiction, pursuant to *28 U.S.C. § 1367*(c)(3), over defendant's pendent state law counterclaim for costs and attorney fees. Because the Court has already determined, for the reasons stated in the R&R, that the release agreement is valid and binding, that agreement is enforceable as to its fee-shifting provision. Because that provision requires plaintiff to pay "all costs and expenses" of defending actions in violation of the release, "including reasonable attorneys' fees," R&R at 18 n.8, and because plaintiff has breached the agreement by bringing this action, defendant is entitled *3 to a determination of the amount of attorney fees which are "reasonable" under the circumstances. See *Astor v. International Bus. Mach. Corp., 7 F.3d 533, 540 (6th Cir. 1993)* (enforcing identical attorney fees provision).

Defendant's motion for judgment on the pleadings is granted with respect to its counterclaim as well. Whether defendant chooses to exercise its contractual prerogative will no doubt depend upon its assessment of all relevant circumstances. If defendant wishes to seek a determination of the amount of reasonable attorney fees, it should submit a request for a hearing on that issue to the Court by not later than February 27, 1997. If no such request is received by that time, the Court will order this case closed.

SO ORDERED.

Dated: Brooklyn, New York

February 3, 1997

RAYMOND J. DEARIE

United States District Judge