UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID MASTRIANNI, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Action No. 3:02CV2261 (CFD) |
| : | |
| BAYER CORPORATION and : | February 23, 2005 |
| BAYER CORPORATION : | |
| DISABILITY PLANS, : | |
| : | |
| Defendants. : | |

## LOCAL RULE 56(a)1 STATEMENT OF UNDISPUTED FACTS

Bayer Corporation ("Bayer" or the "Company") and the Bayer Corporation Disability Plans ("the Plan"), collectively referred to below as "defendants," set forth this statement of material facts for which there is no genuine issue to be resolved at trial.

    1.    Bayer maintains an ERISA employee welfare benefit plan, the Bayer Disability Plans, to provide employees with disability benefits if an eligible employee cannot work because of illness or injury. (Exhibit 1, Declaration of Sharon W. Murphy, Attachment A., copy of Bayer Corporation Disability Plans, at p. 1, § 1.3;[1] Exhibit 2, Deposition of David Mastrianni at p. 59).[2]

    2.    There are two parts to the plan – short term disability (STD) benefits, providing either 60% or 100% of salary for up to 26 weeks (depending on length of service), and long term disability (LTD) benefits of 50-70% of salary if the inability to work exceeds 26 weeks. As defined in the summary plan description, "[d]isability means that you are under the care of a physician and, based on medical evidence of your illness or injury, you are unable to do the

---

[1] Hereinafter cited as "Murphy Dec., Att. __, at __."

essential functions of your job." (Exhibit 1, Murphy Dec., Att. C, copy of Summary Plan Descriptions of Bayer's Disability and Severance Pay Plans, at DIS 2).

3. Section 3.4 of the Plan provides that "a Participant will remain a Participant until the first to occur of the date: (1) coverage ceases under the terms of the Benefit Descriptions, (2) the Participant ceases to be actively employed in an employment status covered by the Plans unless such Participant is on leave under (i) the Family and Medical Leave Act of 1993 or other unpaid leave of absence (for up to four months) approved by an Employer or (ii) the Short-term Disability Plan, or (3) the Participant is no longer in the group of Employees covered by the Plans. . . ." (Exhibit 1, Murphy Dec., Att. A, at p. 5, § 3.4).

4. Similarly, the summary plan description for the disability plan provides that eligibility for STD benefits ends on the last day of actual work if a participant retires, dies, or leaves the company for any reason other than a disability or company-approved unpaid leave of absence (up to four months). (Exhibit 1, Murphy Dec., Att. C, at DIS 6).

5. The exact same provision applies to LTD benefits. (Exhibit 1, Murphy Dec., Att. C, at DIS 11).

6. Bayer also provides a severance pay plan to provide income if employment ends under designated circumstances. One such circumstance involves "[e]limination of your position with the company." (Exhibit 1, Murphy Dec., Att. C, at SEV 2; Att. B, copy of Bayer's Severance Pay Plan, at p. 3, § 3.01).

7. In order to receive benefits, an employee must "[s]ign any forms required by the plan administrator, including a general release of liability for all claims" and "[c]omply with any additional requirements included in [the employee's] employment contract or employee agreement." (Exhibit 1, Murphy Dec., Att. C, at SEV 2; Att. B, at pp. 3-4, § 3.01).

---

[2] Hereinafter cited as "Mastrianni depo. at ___."

2

8. As to both the disability and severance plans, Bayer expressly reserved the right to modify or amend the plans or the summary plan descriptions from time to time and in its sole discretion. Bayer also reserved the right to terminate the plans at any time, with the rights of participants upon termination limited to claims incurred and due up to the date of termination. (Exhibit 1, Murphy Dec., Att. A, at p. 10, §§ 8.6, 8.7; Att. B at p. 12, § 4.11; Att. D, copy of Administrative Information of Summary Plan Descriptions for Disability and Severance Pay Plans, at ADM 6).

9. David Mastrianni ("Mastrianni") was employed by Bayer in the Human Resources department. (Exhibit 2, Mastrianni depo. at p. 60).

10. Mastrianni worked a reduced schedule on account of a disability since August 2001. He received STD benefits from December 14, 2001 through March 18, 2002. (Exhibit 3, copies of letters from CORE, third-party claims administrator for Bayer's STD Plan, dated April 16 and 17, 2002).

11. On March 19, 2002, Mastrianni was notified that he was laid off as part of a reduction-in-force. Mastrianni was presented with a Separation Agreement and General Release (the "Agreement") pursuant to the Bayer Corporation Severance Pay Plan and a letter outlining his benefits under that Plan. (Exhibit 4, copy of letter dated March 18, 2002; Exhibit 5, copy of Separation Agreement and General Release).

12. The letter stated that Mastrianni's termination was effective March 19, 2002. It outlined the substantial benefits for which Mastrianni was eligible under Bayer's severance plan upon signing the Agreement – namely, 26 weeks of salary continuation, health insurance and other designated benefit continuation during the severance pay period, and outplacement services. (Exhibit 4, at pp. 1-2, ¶¶ 2-7).

13. The letter expressly informed Mastrianni that his participation in the Disability plan would end on his last actual day of work. (Exhibit 4, at p. 2, ¶ 8).

14. The Separation Agreement provided Mastrianni's acknowledgment that he had been advised to review the Agreement and the Plan and to discuss his options with an attorney of his own choosing; that he had adequate time to review the Agreement and consider whether or not to sign it; that he was aware that, by signing the Agreement, he gave up any right to sue the Company or to initiate any other legal proceedings against the Company for any claims which he had or believed he had based upon any event which occurred before the Agreement was signed; that he read and understood each and every provision in the Agreement; that he received and had the opportunity to read the summary plan description of the Plan; and that he had the opportunity to read the Plan. (Exhibit 5, at p. 1-2, ¶¶ 2-3).

15. Mastrianni had the right to reject the Severance Agreement, and give up severance pay, or to sign it, accept the severance pay and give up whatever legal claims he may have believed he had against the Company. Mastrianni also had the right to revoke his acceptance within seven days of signing the Agreement. (Exhibit 5, at p. 2, ¶ 4 and addendum).

16. In exchange for the severance payments and benefits offered by the Company, Mastrianni released the Company, its benefit plans, officers, directors, employees, agents, shareholders, affiliates, successors and assigns from all liability upon claims of every nature whatsoever, including, without limitation, claims of negligence, breach of contract, wrongful discharge, and violation of federal, state or local laws. The Release also covers claims, known or unknown, which are based upon any act, event or failure to act which occurred before the date on which the Agreement was signed and became effective. (Exhibit 5, p. 2, ¶ 5).

17. Mastrianni's last day of work at Bayer was March 19, 2002. (Exhibit 2,

4

Mastrainni depo. at p. 32).

18.  By letter dated April 12, 2002, Mastrianni's attorney requested copies of Bayer's disability plan and summary plan description. In the letter, Mastrianni's attorney requested that Bayer modify the severance agreement so that Mastrianni would not waive any right to or release any claim for disability benefits. (Exhibit 6, copy of letter dated April 12, 2002).

19.  By letter dated May 17, 2002, Mastrianni, through a second attorney, once again specifically requested a modification of the Agreement to preserve his disability claim. (Exhibit 7, copy of letter dated May 17, 2002).

20.  By letter dated May 22, 2002, Bayer, through its counsel, rejected Mastrianni's request to modify the severance agreement. (Exhibit 8, copy of letter dated May 22, 2002).

21.  The following day, Mastrianni's attorney again contacted Bayer to request that the Agreement be modified to allow Mastrianni to pursue a claim for disability benefits and an extension of two weeks to return the executed release to allow Mastrianni "sufficient time" "to make a knowing and considered decision regarding the release" in the event Bayer did not agree to modify the Agreement. (Exhibit 9, copy of letter dated May 23, 2002 with attachments, at pp. 2-3).

22.  On May 30, 2002, counsel for Bayer sent Mastrianni's attorney an email message denying Mastrianni's request to carve out disability benefit claims from the scope of the release, and granting Mastrianni an extension of time to accept or reject the severance agreement. (Exhibit 10, copy of email message dated May 30, 2002).

23.  Through his attorneys, Mastrianni sought and received at least two extensions of time to consider the terms of the Agreement. (Exhibit 2, Mastrianni depo. at pp. 54-55; Exhibit 6, at p. 2; Exhibit 9 at p. 2; Exhibit 10; Exhibit 11, copy of Mastrianni's response to defendants'

5

Requests for Admissions, at response to Request No. 15).

24. On June 3, 2002, Mastrianni signed the Agreement. (Exhibit 5, at p.3).

25. Prior to signing the Agreement, Mastrianni reviewed the terms of the Agreement and Bayer's response to his attorneys' requests for a modification to the Agreement. Mastrianni also discussed the effect of the Agreement with his attorney on more than one occasion prior to signing it. (Exhibit 2, Mastrianni depo. at pp. 60-61; Exhibit 11, at response to Request Nos. 7-13).

26. At the time Mastrianni signed the Agreement, he understood that Bayer did not believe he was entitled to LTD benefits, and signed the Agreement knowing that Bayer had refused to modify the language of the Agreement as requested by his attorneys "carving out" coverage for LTD benefits. (Exhibit 2, Mastrianni depo. at pp.54, 56-59).

27. Nevertheless, on or about October 1, 2002, over six months after his termination, and almost four months after signing the general release and after having received all of the benefits for which he was eligible under the severance plan, Mastrianni submitted an application for disability benefits. (Exhibit 2, Mastrianni depo. at pp. 47-48; Exhibit 11, at response to Request Nos. 14 and 17; Exhibit 12, copy of LTD benefits application, dated October 2, 2002).

Respectfully submitted,

DEFENDANTS
BAYER CORPORATION and BAYER
CORPORATION DISABILITY PLANS


By: _____
William J. Albinger, ct19861
Wiggin and Dana LLP
One Century Tower
265 Church Street
New Haven, CT 06510-7001
203.498.4400
203.782.2889 fax


OF COUNSEL:

William J. Klemick, Pa. Bar No. 51688
Bayer Corporate and Business Services LLC
100 Bayer Road
Pittsburgh, PA  15205-9741
(412) 777-8304

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Local Rule 56(a)1 Statement of Undisputed Facts was served by U.S. mail, postage pre-paid, this 23rd day of February, 2005, upon the following counsel:

>David S. Rintoul, Esquire
>Brown Paindiris & Scott, LLP
>The Old Town Hall
>2252 Main Street
>Glastonbury, CT 06033

_____
William J. Albinger

\11400\41\512455.1