UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID MASTRIANNI, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Action No. 3:02CV2261 (CFD) |
| : | |
| BAYER CORPORATION and : | April 22, 2005 |
| BAYER CORPORATION : | |
| DISABILITY PLANS, : | |
| : | |
| Defendants. : | |

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 7(d) of the Local Rules of Civil Procedure, defendants Bayer Corporation ("Bayer") and the Bayer Corporation Disability Plans ("the Plan"), collectively referred to below as "defendants," submit the following reply brief in further support of their motion for summary judgment.

Much of the opposition brief filed by plaintiff David Mastrianni ("Mastrianni") argues that Mastrianni's disability benefits were vested as of the time he was discharged. (Opposition Brief, at pp. 4-7). It appears that Mastrianni raises the "vesting" issue either to argue that vested welfare benefits cannot be released – an argument that is clearly contrary to law – or instead to argue that "a release of vested [disability benefits] is only effective if the vested benefits are specifically mentioned" and, by extension, that the release "lack[s] clarity" and was not made knowingly and voluntarily because it does not specifically mention vested disability benefits.

(Id. at p. 3). What the opposition is lacking, however, is any persuasive argument or legal authority to support Mastrianni's theories.

The general release executed by Mastrianni in this case is clear and unambiguous, encompassing not only Bayer but also its "*benefit plans*," and discharging them "from all liability upon claims of every nature whatsoever," including claims of "violation of federal, state or local laws," and including claims, "known or unknown," which are based upon anything that occurred before the date on which the release became effective. (Local Rule 56(a)1 Statement of Undisputed Facts at ¶ 16).[1] Mastrianni, in attempting to argue that the release fails for lack of an express reference to claims for "vested disability benefits," misinterprets and largely ignores the relevant standard set forth in the Second Circuit's controlling decision, *Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360 (2d Cir. 1991). Instead, he focuses on a case of questionable relevance from the Eighth Circuit involving a divorce decree,[2] and his own evasive and self-serving testimony – in the face of a mountain of undisputed evidence to the contrary – that the release was unclear and that he did not intend to waive his right to receive disability benefits. (Opposition Brief at pp. 7 & 10-11). There simply is no genuine factual dispute, however, concerning either the plain and unambiguous language of the release or the circumstances under which Mastrianni signed it. Rather, the undisputed facts make clear that Mastrianni, in exchange for substantial separation benefits to which he was not otherwise entitled, knowingly and voluntarily executed a release which covers the benefit claims he attempts to bring in this case.

---

[1] Hereinafter cited as "Statement at ¶ __."
[2] The present case involves not a divorce decree but a separation agreement and general release. Mastrianni's reliance on *Lyman Lumber Co. v. Hill*, 877 F.2d 692, 694 (8th Cir. 1989) is therefore misplaced. And even if that were not so, while the court in *Lyman Lumber* held that a divorce decree did not divest a former spouse of a beneficiary interest in a benefit plan, it also recognized that a former spouse's interest can be divested in a property settlement in a divorce judgment or settlement agreement, *see id.* at 693-94, much like the separation agreement at issue here.

2

For the reasons that follow, defendants respectfully submit that their motion for summary judgment should be granted.

## Argument

### A.   *No Genuine Issue as to any Material Fact Exists*

The record demonstrates that there are no issues of fact in dispute. There is no disagreement as to the identity of the key documents — the severance plan document and summary plan description, the separation agreement and general release, and correspondence exchanged in connection with Mastrianni's employment termination and the separation agreement. Of the twenty-seven paragraphs in defendants' Local Rule 56(a)1 Statement of Undisputed Facts, all but three are admitted outright.[3] One of plaintiff's denials is partial and in direct contradiction to his deposition testimony. *Compare* Plaintiff's Local Rule 56(a)2 Statement of Undisputed Facts at ¶ 26 *with* Statement at ¶ 26, Exhibit 2, Mastrianni depo. at pp.54, 56-59. The other two paragraphs plaintiff disputes, Statement at ¶¶ 15 and 16, raise issues of contract interpretation, which is a matter not of fact but law. *See* Defendants' Memorandum of Law in Support of Motion for Summary Judgment, at p. 11 and authorities cited therein; *see also id.* at pp.15 – 16 and authorities cited therein (holding releases were knowing and voluntary as a matter of law).

### B.   *"Vested" Status of Mastrianni's Benefits*

Relying on *Feifer v. Prudential Ins., Co. of Am.*, 306 F.3d 1202 (2d Cir. 2002) and *Lauder v. First UNUM Life Ins. Co.*, 284 F.3d 375 (2d Cir. 2002), Mastrianni argues that his disability benefits were vested as of the time he was terminated. As an initial matter,

---

[3] Plaintiff also relies on his Affidavit filed in support of his Opposition to Defendants' Motion for Summary Judgment. However, in paragraph 8 of his Affidavit, plaintiff incorrectly characterizes the April 17, 2002 letter for CORE, third-party claims administrator for Bayer's short term disability ("STD") plan. That letter did not certify plaintiff as totally disabled as of March 18, 2002. It simply approved plaintiff's receipt of STD benefits through

For the reasons that follow, defendants respectfully submit that their motion for summary judgment should be granted.

## Argument

### A.   *No Genuine Issue as to any Material Fact Exists*

The record demonstrates that there are no issues of fact in dispute. There is no disagreement as to the identity of the key documents — the severance plan document and summary plan description, the separation agreement and general release, and correspondence exchanged in connection with Mastrianni's employment termination and the separation agreement. Of the twenty-seven paragraphs in defendants' Local Rule 56(a)1 Statement of Undisputed Facts, all but three are admitted outright.[3] One of plaintiff's denials is partial and in direct contradiction to his deposition testimony. *Compare* Plaintiff's Local Rule 56(a)2 Statement of Undisputed Facts at ¶ 26 *with* Statement at ¶ 26, Exhibit 2, Mastrianni depo. at pp.54, 56-59. The other two paragraphs plaintiff disputes, Plaintiff's Statement at ¶¶ 15 and 16, raise issues of contract interpretation, which is a matter not of fact but law. *See* Defendants' Memorandum of Law in Support of Motion for Summary Judgment, at p. 11 and authorities cited therein; *see also id.* at pp.15 – 16 and authorities cited therein (holding releases were knowing and voluntary as a matter of law).

### B.   *"Vested" Status of Mastrianni's Benefits*

Relying on *Feifer v. Prudential Ins., Co. of Am.*, 306 F.3d 1202 (2d Cir. 2002) and *Lauder v. First UNUM Life Ins. Co.*, 284 F.3d 375 (2d Cir. 2002), Mastrianni argues that his disability benefits were vested as of the time he was terminated. As an initial matter,

---

[3] Plaintiff also relies on his Affidavit filed in support of his Opposition to Defendants' Motion for Summary Judgment. However, in paragraph 8 of his Affidavit, plaintiff incorrectly characterizes the April 17, 2002 letter for CORE, third-party claims administrator for Bayer's short term disability ("STD") plan. That letter did not certify plaintiff as totally disabled as of March 18, 2002. It simply approved plaintiff's receipt of STD benefits through

3

Mastrianni's reliance on *Feifer* and similar cases is misplaced because *Feifer* stands for the proposition that, "*absent explicit language to the contrary*, a plan document providing for disability benefits promises that these benefits vest with respect to an employee no later than the time that the employee becomes disabled." *Feifer,* 306 F.2d at 1212 (emphasis added). In contrast, the plans at issue in this case contain "explicit language to the contrary" of the default rule articulated in *Feifer*. As detailed in the defendants' original memorandum, the plans at issue contain specific provisions on vesting, all of which unequivocally show that the benefits here at issue were not, in fact, "vested."

Ultimately, the battle over vesting is a false front, and is largely moot. Whether the benefits were vested or not, defendants are still entitled to summary judgment because of the knowing and voluntary release signed by Mastrianni in this case, which expressly encompassed claims for benefits.

### C.   *Waiver of "Vested" Benefits*

Mastrianni, claiming that his disability benefits were vested, argues that, as a matter of law, vested ERISA benefits can be waived only by way of an "explicit" release that "specifically refers" to the vested "disability benefits" being released. (Opposition Memo., at pp. 7-8). Mastrianni's novel theory, however, finds no support in the applicable case law.

Aside from the Eighth Circuit divorce case discussed above in footnote 2, Mastrianni once again eschews any authority in support of his legal position. Moreover, he overlooks the governing standard set by the Second Circuit in *Laniok* (a case involving the waiver of ERISA pension benefits) – which does not depend on whether a release agreement expressly references the particular claim at issue in subsequent litigation, but rather whether the agreement is clear. *See Laniok,* 935 F.2d at 1368. Here, the release bars "all liability upon claims of every nature

(..continued)
March 18, 2002. *See* Statement at ¶10, Exhibit 3.

whatsoever, including, without limitation, . . . violation of federal, state or local laws" and claims, "known or unknown, which are based upon any act, event or failure to act which occurred before the date on which this Agreement is signed and becomes effective." (Statement at ¶ 16). Given the clear language of the agreement, and particularly in light of the undisputed facts concerning the exchange of correspondence between counsel for the parties on the specific issue of the disability benefits, defendants submit that the release clearly bars the disability claim and that nothing more explicit is required. *Cf. Finz v. Schlesinger*, 957 F.2d 78, 83 (2d Cir. 1992) (upholding waiver of ERISA benefits in part because "there is no question that [plaintiff] knew that he may have been covered under the plan when he relinquished his benefits"); *see also Krackow v. Dr. Jack Kern Profit Sharing Plan*, 2002 U.S. Dist. LEXIS 20524, at *21 (E.D.N.Y. May 29, 2002)(quoting *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 182 n.5 (1st Cir. 1995)("While 'an employee does not need to know' that he is waiving 'rights *under ERISA*,' the employee must know that he is waiving 'rights *under a benefit plan* that ERISA happens to protect.'"))(copy attached at Tab A).

The fact that the release signed by Mastrianni in this case contains a carve-out limited only to "vested pension benefits" provides further support for the release. (Statement at Exhibit 5, ¶ 3). The inclusion of the carve-out shows that (a) the parties knew how to craft a carve-out from the general release, and (b) no carve-out was included for non-pension benefits, "vested" or otherwise. This carve-out limited to vested pension benefits is a clear manifestation of an intention to include all other benefits – including disability benefits – within the scope of the release.

The same circumstance was presented in *Bennett v. CNA Insurance Cos.*, 2001 U.S. Dist. LEXIS 107 (N.D. Cal. Jan. 4, 2001)(copy attached at Tab B). In that case, Bennett sued for

disability benefits under ERISA. The defendant argued that a release obtained in an employment discrimination case constituted a waiver of Bennett's disability claim. As in this case, the release covered "all claims of every kind or nature, past present or future, known or unknown, suspected or unsuspected . . . ." *Id.* at *8 (internal quotation marks omitted). While the release expressly exempted vested pension benefits, it contained no such exemption for disability benefits. *Id.* at *15. In upholding the release as to Bennett's disability claim, the court stated:

> Examination of the totality of the circumstances demonstrates that plaintiff knowingly and voluntarily released her claims to employee disability benefits in the Settlement. *This conclusion is reinforced by the fact that the Settlement specifically exempted vested pension benefits, which shows that the parties discussed at least one employee benefit plan and knew how to exclude it from the general release in crafting the Settlement. The exclusion of pension benefits demonstrates that the parties did not regard employee benefits as being outside the scope of the Settlement unless expressly excluded. Thus, the parties knew that other employee benefits would be released by the Settlement.*

*Id.* * 15-16 (emphasis added).

Similarly, in *Smart v. Gillette Co. Long-Term Disability Plan*, cited in *Krackow v. Dr. Jack Kern Profit Sharing Plan, supra,* a release read:

> In consideration of the severance pay and other benefits to be provided you as part of The Gillette Company's Restructuring Program, you do hereby . . . release and agree to indemnify and hold harmless [Gillette] . . . from any and all claims, charges, complaints, or causes of action, now existing, both known and unknown or arising in the future, including but not limited to, all claims of breach of contract . . ., or [claims] arising from alleged violations of . . . any . . . local, state, or federal law, regulation or policy or any other claim relating to or arising out of your employment with [Gillette] or termination thereof . . . .

*Id.* at 178-79. The plaintiff argued that because the agreement made no reference to the long-term disability plan, but stated that "severance pay *and other benefits*" would be provided, the provision was ambiguous and the trial court should have considered extrinsic evidence regarding her entitlement to disability benefits. *Id.* at 179. The court disagreed. The plaintiff also argued that, despite the breadth of the release, she "did not know that she was releasing any rights under

6

ERISA" and "did not intend to release any rights under ERISA." *Id.* at 182 n.5. The court rejected the argument relying upon the language quoted above in *Krackow*. *Id.*

For the foregoing reasons, Mastrianni's legal argument that the release is invalid for lack of a specific reference to "vested disability benefits" is unsustainable.

### C.    *"Knowing and Voluntary Waiver"*

Mastrianni's final assault upon the validity of the general release is simply an extension of his earlier unfounded legal argument that in order to constitute a valid waiver of vested disability benefits a release must specifically reference those benefits. Specifically, according to Mastrianni, because the release did not specifically reference "vested disability benefits," it lacked clarity and was not made knowingly and voluntarily. Once again, however, Mastrianni is unable to put forth any reasoned support for his argument. Moreover, his contention is contradicted by the undisputed record evidence.

As support for his argument that the release was not executed knowingly and voluntarily, Mastrianni purports to rely upon the "totality of the circumstances" standard adopted by the Second Circuit in *Laniok*, which he characterizes as a "four-part test to determine whether a release of ERISA rights is knowing and voluntary." (Opposition Brief at p. 9). Mastrianni, however, misconstrues the nature of the "totality of the circumstances" standard articulated by the court in *Laniok*. Contrary to Mastrianni's suggestion, and as discussed above and in defendants' initial brief, the court in *Laniok* did not establish a rigid test for determining the validity of an ERISA release. Rather, the court identified a list of *six* "non-exhaustive" factors courts should consider when determining whether a waiver of ERISA claims was made knowingly and voluntarily. *Laniok*, 935 F.2d at 1368 (quoting *Bormann v. AT&T Communications, Inc.*, 875 F.2d 399, 403 (2d. Cir. 1989)). Importantly, the court emphasized

7

that the factors were not to be applied mechanistically and that the presence or absence of any single factor is not dispositive as to the validity of a release. *Id.* The court further recognized that "any attempt to establish a checklist of all applicable factors or to insist on rigid adherence to such a list is foreclosed by the very nature of the inquiry" which is a "pragmatic one: whether, in the totality of the circumstances, the individual's waiver of his right can be characterized as 'knowing and voluntary.'" *Id.*; *see also Bormann*, 875 F.2d at 403 & n.1.

As discussed at length in defendants' original memorandum, a proper application of the totality of the circumstances standard to the undisputed facts of this case conclusively establishes that the release *was* knowingly and voluntarily made. These same undisputed facts speak forcefully to the unambiguous nature of the release and demonstrate that the solitary *Laniok* factor relied upon by Mastrianni in his opposition brief (i.e., the clarity of the agreement) has been satisfied.[4] For instance, paragraph 3 of the release provides that Mastrianni is "aware that, by signing this Agreement, he is giving up any right to sue the Company, or to initiate any other legal proceedings against the Company, not only on the basis of the discrimination laws mentioned above, *but for any other claims which he has or believes he has based upon any event which occurred before this Agreement is signed, except claims for vested pension benefits and claims which cannot legally be waived, such as for workers' compensation.*" (Statement at Exhibit 5, ¶ 3). In addition, Mastrianni was advised by paragraph 4 of the release that he had the right to "reject it, and give up severance pay, or to sign it, accept severance pay and *give up whatever legal claims [he] might believe he . . . has against the Company.*" (Id. at ¶ 4). Finally, pursuant to paragraph 5 of the release, Mastrianni released "the Company [and] its benefit plans .

---

[4] Mastrianni, in his opposition memorandum, does not address defendants' contention that the release satisfies the five (5) remaining factors identified by the *Laniok* court and, thus, apparently concedes the point. *See, e.g., Barlow v. Connecticut*, 319 F.Supp.2d 250, 266-67 (D.Conn. 2004)(quoting *Taylor v. City of New York*, 269 F.Supp.2d 68, 75 (E.D.N.Y.2003) ("'Federal courts may deem a claim abandoned when a party moves for summary judgment on

8

. . from all liability upon claims of every nature whatsoever, including . . . *claims, known and unknown, which are based upon any act, event or failure to act which occurred before the date on which th[e] Agreement is signed and becomes effective.*" (Id. at ¶ 5).

The above-quoted language of the general release could not be more precise as to the nature of the claims being released (i.e., all claims, known or unknown, that Mastrianni had or believed he had except "vested pension benefits and claims which cannot legally be waived."). Notwithstanding the clarity of the foregoing language, Mastrianni now argues that he "was not clear regarding the effect of the Separation Agreement on his right to keep receiving disability benefits." (Opposition Brief at p. 10). The undisputed facts regarding the negotiations between Mastrianni's attorneys and Bayer's counsel, however, tell quite a different story. First, both of Mastrianni's attorneys recognized that the plain language of the general release constituted a waiver of Mastrianni's disability claim. Specifically, Mastrianni's former counsel advised Bayer that "[w]hile Mastrianni would like to accept the severance offered him by Bayer, *his disability naturally requires certain modification in the language so that he does not waive or release claims to disability benefits*." (Statement at ¶ 18). Likewise, Mastrianni's present counsel went so far as to propose language for inclusion in the release that would carve out claims for disability benefits and advised Bayer that the language was necessary in order to provide Mastrianni the "opportunity to . . . apply for long-term disability benefits, and if he qualifies, to receive benefits." (Statement at Exhibits 7 & 9). Indeed, Mastrianni confirmed that this was his understanding during his deposition. When asked whether he understood at the time he signed the release that Bayer did not believe he was entitled to disability benefits, Mastrianni testified that "[a]ll I know is they weren't even giving me an opportunity to file for my rights under my disability . . . . They weren't giving me the opportunity to file . . . ." (Statement at Exhibit 2, p.

(..continued)
one ground and the party opposing summary judgment fails to address the argument in any way.'")).

9

58). Second, in response to specific requests by Mastrianni's attorneys for a modification of the general release to carve out a claim for vested disability benefits, Bayer's counsel consistently said no. For instance, in a May 30, 2002 email message, Bayer's counsel advised Mastrianni's counsel in no uncertain terms that Mastrianni's "position as explained in your last letter to me has been considered. Nevertheless, the request that disability benefits claims be carved out from the release must respectfully be denied." (Statement at ¶ 22).

As the above undisputed facts make readily apparent, at the time Mastrianni signed the general release, he was fully cognizant that it constituted a broad release of all claims, known or known, that he had or believed he had against Bayer or its benefits plans; that two separate attorneys had sought to negotiate carve out language that would have allowed him to pursue a claim for disability benefits; and that Bayer consistently refused to modify the Agreement to include such language. In the face of these undisputed facts, Mastrianni freely chose to sign the release and accept the substantial separation benefits available to him under the separation agreement. Accordingly, it is undisputed that the release represents a knowing and voluntary waiver of Mastrianni's right to pursue a claim for disability benefits.

## Conclusion

For the reasons stated above and in their original memorandum, Bayer Corporation and the Bayer Corporation Disability Plans respectfully request that this Court grant their motion for summary judgment.

Respectfully submitted,

DEFENDANTS
BAYER CORPORATION and BAYER
CORPORATION DISABILITY PLANS

By: _____William J. Albinger_____
William J. Albinger, ct19861
Wiggin and Dana LLP
One Century Tower
265 Church Street
New Haven, CT 06510-7001
203.498.4400
203.782.2889 fax

OF COUNSEL:

William J. Klemick, Pa. Bar No. 51688
Bayer Corporate and Business Services LLC
100 Bayer Road
Pittsburgh, PA 15205-9741
(412) 777-8304

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendants' Reply Brief in Further Support of Motion for Summary Judgment was served by U.S. mail, postage pre-paid, this 22nd day of April, 2005, upon the following counsel:

> David S. Rintoul, Esq.
> Brown Paindiris & Scott, LLP
> The Old Town Hall
> 2252 Main Street
> Glastonbury, CT 06033

_____
William J. Albinger

\11400\41\526551.1