A

LEXSEE 2002 US DIST LEXIS 20524

**ROBERT KRACKOW, Plaintiff,–v.–DR. JACK KERN PROFIT SHARING PLAN and JACK KERN, Defendants.**

**00 CV 2550 (NG) (RLM)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

*2002 U.S. Dist. LEXIS 20524*

**May 29, 2002, Decided
May 29, 2002, Filed**

**DISPOSITION:** *1 Plaintiff's motion for partial summary judgment granted, and defendants' motion for summary judgment granted. Claim dismissed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employee sued defendants, his former employer and the employer's pension plan, under the Employee Retirement Income Security Act (ERISA), *29 U.S.C.S. § 1001* et seq., to recover benefits, for breach of fiduciary duty, and for failure to provide information. The employee moved for partial summary judgment with respect to two years' worth of benefits. Defendants moved for summary judgment as to all claims.

**OVERVIEW:** The employee claimed that when he joined the employer's dental practice, the employer (who was also the ERISA plan administrator) told him that he would be eligible to participate in the plan after three years, when actually he was eligible after one year. The employee's employment agreement provided for employer contributions to the plan beginning in the fourth year. The employer claimed that the employee waived the first two years of benefits in exchange for a higher salary. The employee later signed a waiver of plan contributions as part of an agreement to reimburse the employer for alleged improper billing; the employee signed the agreement but claimed he did not believe he owed money to the employer. The court found that although it was possible for the employee to have waived his initial participation, the employer did not establish that the employee knew he was eligible for participation and chose to relinquish benefits. The waiver in the reimbursement agreement, however, was voluntary. The evidence did not demonstrate that the employer breached his fiduciary duty under ERISA in obtaining that waiver or that the employer failed to supply required plan information.

**OUTCOME:** The employee's motion for partial summary judgment on his claim for benefits from his initial two years of eligibility was granted. Defendants' motion for summary judgment was granted with respect to benefits waived by the reimbursement agreement and the employee's claims of breach of fiduciary duty and failure to supply information.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
HN1 Motions for summary judgment are granted if, viewing the evidence and the inferences drawn from the facts in the light most favorable to the party opposing the motion, there is no genuine issue of any material fact, and the moving party is entitled to judgment as a matter of law.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
HN2 Section 502(a)(1)(B) *(29 U.S.C.S. § 1132(a)(1)(B))* of the Employee Retirement Income Security Act, *29 U.S.C.S. § 1001* et seq., permits a civil action by a plan participant to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*

Case 3:02-cv-02261-CFD    Document 49-2    Filed 04/22/2005    Page 3 of 18

Page 2
2002 U.S. Dist. LEXIS 20524, *1

HN3 Interpretation of the terms of an Employee Retirement Income Security Act, *29 U.S.C.S. § 1001* et seq., plan, or a determination of eligibility under the plan, are the traditional discretionary determinations of an administrator that may be entitled to deference if the plan documents so provide.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
HN4 Deference is inconsistent with the law that specifically governs waiver of Employee Retirement Income Security Act (ERISA), *29 U.S.C.S. § 1001* et seq., benefits. Although an employee's agreement with an employer to waive benefits under an ERISA plan or to release a claim for benefits is permissible, ERISA waivers require closer scrutiny by the district court than waivers of general contract claims. A waiver of benefits under ERISA will be sustained only upon the court's finding, after close inspection of the totality of circumstances surrounding the waiver, that it was knowingly and voluntarily made. This required judicial inquiry into the validity of the waiver is incompatible with the deferential standard of review of the determinations of an administrator.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings*
HN5 Fed. R. Civ. P. 15(a) provides that leave to amend shall be freely granted when justice so requires.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
HN6 An agreement between an employer and an employee to waive benefits or to relinquish a claim for benefits is permissible if knowingly and voluntarily made. This includes an agreement by which the employee waives his right to participate in an Employee Retirement Income Security Act (ERISA), *29 U.S.C.S. § 1001* et seq., plan in return for the payment of employment benefits. In negotiating and securing such waivers, an employer acts as an employer or prospective employer, not in his fiduciary capacity as administrator of the ERISA plan. ERISA recognizes and explicitly approves an employer undertaking the dual role of plan administrator,

despite the inherent conflict of loyalties, especially in a single employer pension plan. Fiduciary duty and prohibited transaction rules apply only to decisions by an employer acting in its fiduciary capacity.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions*
HN7 Section 406(a)(1)(D) *(29 U.S.C.S. § 1106(a)(1)(D))* of the Employee Retirement Income Security Act (ERISA), *29 U.S.C.S. § 1001* et seq., which prohibits certain transactions by fiduciaries, does not apply to the payment of benefits pursuant to an agreement between employers and employees to release employment-related claims in return for the payment of benefits, just because the employer benefits from the agreement. Likewise, the employer is not prohibited from obtaining a release of ERISA claims in return for the payment of employment benefits.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions*
HN8 The anti-alienation and anti-assignment provisions under *26 U.S.C.S. § 401(a)(13)* and *29 U.S.C.S. § 1056(d)* are designed to prevent a pension plan participant from dissipating his benefits before retirement, not to bar an agreement by the employee with the employer to forego benefits or to waive a claim for benefits.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions*
HN9 The United States Court of Appeals for the Second Circuit has rejected the argument that obtaining an individual waiver of benefits from an employee violates the rule that Employee Retirement Income Security Act, *29 U.S.C.S. § 1001* et seq., plan documents cannot be altered except by the procedures for amendment that are set forth in those documents. The Second Circuit does not believe that an individual waiver of the right to participate varies the terms of the plan itself; it does not alter the plan's definition of eligibility.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

HN10 The inquiry into waiver of rights under an Employee Retirement Income Security Act (ERISA), *29 U.S.C.S. § 1001* et seq., plan consists of two questions: whether a party actually knew she was relinquishing a benefit, and whether she acted voluntarily in doing so. While an employee does not need to know that he is waiving rights under ERISA, the employee must know that he is waiving rights under a benefit plan that ERISA happens to protect.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*

HN11 The following non-exhaustive factors are considered in determining whether the totality of the circumstances shows that an employee's waiver of participation in an Employee Retirement Income Security Act (ERISA), *29 U.S.C.S. § 1001* et seq., pension plan or the release of an ERISA claim is knowing and voluntary: (1) the plaintiff's education and business experience; (2) the amount of time the plaintiff had possession of or access to the agreement before signing it; (3) the role of the plaintiff in deciding the terms of the agreement; (4) the clarity of the agreement; (5) whether the plaintiff was represented by or consulted with an attorney, as well as whether the employee had a fair opportunity to do so; and (6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law. The foregoing is not a checklist of all applicable factors, and rigid adherence to such a list is foreclosed by the very nature of the inquiry.

*Contracts Law > Defenses > Duress & Undue Influence*

HN12 That an employee felt that it was in his best interests to agree to an employer's demand in order to preserve their employment relationship is not duress.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

HN13 Section 502(a)(3) (*29 U.S.C.S. § 1132*(a)(3)) of the Employee Retirement Income Security Act (ERISA), *29 U.S.C.S. § 1001* et seq., authorizes an action for breach of fiduciary duty only if it seeks equitable relief and relief is unavailable under other ERISA enforcement provisions for the injury claimed. An action for money damages may not be brought under § 502(a)(3). Section 502(a)(3) is a "catchall" provision that affords appropriate equitable relief for injuries caused by violations of fiduciary duty that § 502 does not elsewhere adequately remedy.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Failures to Respond*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Failures to Respond*

HN14 Section 502(c) (*29 U.S.C.S. § 1132*(c)) of the Employee Retirement Income Security Act (ERISA), *29 U.S.C.S. § 1001* et seq., provides that an administrator who fails to provide to a plan participant, within 30 days of a request, certain information that ERISA requires the administrator to supply may in the court's discretion be personally liable to such participant in the amount of up to $100 a day from the date of such failure or refusal.

COUNSEL: For Plaintiff: Gerald P. Wolf, The Wolf Law Group, P.C., Mineola, NY.

For Defendants: Harvey M. Katz, Berlack, Israels & Liberman, LLP, New York, NY.

JUDGES: NINA GERSHON, United States District Judge.

OPINIONBY: NINA GERSHON

OPINION:

### MEMORANDUM AND ORDER

GERSHON, United States District Judge:

This is an action under ERISA to recover benefits that plaintiff, Dr. Robert Krackow, claims he is entitled to under the terms of a profit sharing plan of his former employer, defendant Dr. Jack Kern. The complaint also seeks damages and statutory penalties for breach of fiduciary duty and for failure to provide information and documentation that plaintiff had requested. The Dr. Jack Kern Profit Sharing Plan (the "Plan") is a pension plan under the Employee Retirement *2 Income Security Act (ERISA), *29 U.S.C. §§ 1001* et seq. Kern is the Plan's trustee and administrator, and thus is an ERISA fiduciary. The disputes as to benefits concern two separate time periods: 1990-1991 and 1994-1996. Defendants claim that plaintiff is not entitled to benefits for those years as a result of agreements that plaintiff knowingly and voluntarily entered into in which he agreed that no contributions to the Plan on his behalf

would be made. Plaintiff moves for partial summary judgment on his claim that defendants wrongfully withheld benefits based on contributions that he claims he was entitled to under the terms of the Plan for 1990 and 1991. Defendants move for summary judgment dismissing all of Krackow's claims.

**Facts**

The following facts are undisputed except as otherwise indicated.

Dr. Krackow and Dr. Kern are dentists. In 1988, Krackow had his own practice in Manhattan and also worked part-time for a dentist in Queens. His total income from both employments that year was approximately $65,000. Kern had a practice as sole proprietor in Manhattan and was interested in hiring an additional dentist as an employee. After a series *3 of meetings and discussions, including a one day a week tryout period to determine if they could work together satisfactorily, Krackow and Kern entered into a written employment agreement, dated March 19, 1989, including an addendum to the agreement that was executed simultaneously, by which Krackow became an employee of Kern's practice. The agreement contemplated that, after ten years, Krackow would become an equal partner with Kern. The addendum set forth in a table Krackow's compensation for each year. For years 1, 2 and 3, the table specified amounts of cash compensation — $100,000, $105,000 and $110,000, respectively, and each year listed "None" under the column labeled "Addition". For years 4 and 5, the table specified $110,000 under "Amount" and "15% Contribution to Keogh Plan" under "Addition"; for year 6, $120,000 plus 15% Keogh contribution. For each of years 7 through 10, the agreement provided for a specified amount plus either a 15% Keogh contribution or a specified percentage of net income in each year, whichever was greater, with both the specified amounts and the percentages of net income increasing each year.

The Plan had been established in 1983 and was in *4 effect when Krackow commenced his employment. There is no dispute that Krackow is fully vested. The Plan's governing documents are the Smith Barney Prototype Defined Contribution Plan and Trust and an Adoption Agreement. The Plan at the pertinent time provided that employees were eligible to participate beginning on a specified date after completion of one year of service. The Plan provided that, as a profit sharing plan, the employer contributions would be determined each year by resolution of the employer's board of directors not to exceed 15% of the aggregate compensation of all Plan participants, that the contributions would be allocated among the participants pro rata based on their compensation, and that the contribution for each partic-

ipant would not exceed 15% of that participant's salary. Kern testified at his deposition that each year, his accountant prepared a list of the employees with the figure for 15% of their earnings. Kern testified that he would send checks for those amounts for each employee's account to Smith Barney. Krackow now claims entitlement to the benefits derived from contributions that should have been made by Kern in 1990 and 1991 pursuant to the Plan *5 documents.

It is undisputed that during the negotiations and before execution of the employment agreement, Krackow neither requested nor received a copy of the Plan or a Plan summary. Indeed, Krackow does not dispute that he never requested or received copies of the Plan, a summary of the Plan or other Plan documents at any time before his employment with Kern was terminated in 1999. Krackow testified at his deposition that, during his discussions with Kern, Kern told him that the Plan provided for eligibility for participation after three years (when it was really one year), that he relied upon and had no reason to question Kern's statement, and that in entering into the employment agreement which did not provide for employer contributions to the Plan on his behalf until the fourth year, Krackow believed, based upon Kern's misrepresentations, that this provision accurately reflected the terms of the Plan. Thus, according to Krackow's testimony, he did not knowingly and intentionally waive his rights under the Plan to employer contributions for 1990 and 1991. The employment agreement did not refer to a "waiver" of any pension contributions or ERISA rights. Krackow maintains that he *6 first became aware in 1999, after he had requested and reviewed Plan documents with his attorney, of his eligibility for participation in the Plan after one year.

Krackow was represented by counsel when he entered into the employment agreement, although the negotiations were conducted by the principals directly. It is undisputed that, during the negotiations, Kern offered him $90,000 cash compensation, but Krackow asked for more and the parties ultimately agreed to $100,000 as the starting salary. Kern testified that the agreement as to compensation was the product of Kern's wish to limit Krackow's total starting compensation to $100,000 and to provide for increases in later years after Krackow hopefully generated business to justify the increase, and Krackow's preference to receive that entire sum as salary until his total compensation was greater. Krackow, on the contrary, testified that the discussions concerning starting compensation involved cash compensation only and that salary was not discussed in conjunction with participation in the pension plan.

In 1994, Kern questioned Krackow about a certain billing, which then broadened into a claim that Krackow had, without Kern's *7 authorization, improperly discounted or provided free dental services to friends and relatives. Kern claimed that Krackow owed him $80,000 in lost billings and demanded reimbursement. Krackow denies that he did anything improper and maintains that all of his billing had been done openly and all billing records had been available to Kern and never previously questioned by him. Nevertheless, Krackow agreed to repay the funds (Krackow asserts that he felt he had no choice), and the parties entered into a letter agreement dated October 25, 1994 for "repayment by Krackow to Kern of $80,000 in erroneous billing credits given by Krackow to various of his patients." The letter agreement set forth the approximate amounts that Krackow was entitled to as contributions to the pension plan in 1994, 1995 and 1996 pursuant to the employment agreement ($ 17,567, $19,067 and $20,567 respectively). Krackow agreed "to waive these annual contributions" for those years "as partial repayment of the $80,000 debt" and to inform the plan administrator at Smith Barney in writing of that election. Krackow also agreed to pay his own malpractice insurance premiums, notwithstanding the employment *8 agreement's provision for employer payment, until the balance of the $80,000 obligation (reduced by any payments made by the patients) was satisfied. The letter agreement further states that it "constitutes a complete settlement of any erroneous billing credits" given by Krackow to his patients. For each of these years, Krackow signed a letter to the plan administrator at Smith Barney stating: "I hereby waive any contribution on my behalf to the ... Keogh account for the year thereby absolving Dr. Jack Stuart Kern of any contribution obligations." Krackow testified that these letters were prepared by Kern, but he acknowledged executing those letters and the letter agreement even though he believed, and told Kern at the time, that he had acted properly and did not owe money to Kern. Krackow now claims that the 1994 agreement is void under ERISA and violated defendants' fiduciary duty to him.

In February 1999, Kern gave notice of termination to Krackow, and Krackow ceased working for Kern in April 1999. By letter dated May 20, 1999 Krackow demanded that, pursuant to Section 502(c)(1)(B) of ERISA, *29 U.S.C. § 1132*(c)(1)(B), Kern provide him with the Plan *9 and various Plan-related documents, as well as records pertaining to his benefits. Krackow received certain of the requested documents on July 7, 1999. By letter dated October 12, 1999, Krackow's attorney demanded payment of the contributions with earnings for 1990-1991 and 1994-1996, and also requested a copy

of the most recent Prototype Plan adopted by Kern. The claim of a disclosure violation is based upon defendants' delayed and incomplete response to Krackow's disclosure demands.

Krackow's attorney, in subsequent letters to Kern's attorney, and to an arbitrator for the American Arbitration Association that was hearing other, non-ERISA employment claims between Kern and Krackow, stated that Kern's attorney had admitted that Krackow was entitled to the benefit of pension contributions that Kern should have made in 1990 and 1991, but that Kern would only agree to payment as part of an overall settlement of all disputes. The complaint claims that this linkage also violated defendants' fiduciary duty to Krackow.

## Discussion

Krackow seeks partial summary judgment only on his claim for unpaid benefits attributable to Kern's failure to make contributions for 1990-1991. In *10 opposing Krackow's motion, and in seeking summary judgment for those years (as well as on all other claims), defendants raise numerous arguments, including: (1) there is no cause of action under ERISA or right under the terms of the Plan to "contributions"; (2) plaintiff failed to make a factual showing entitling him to contributions for 1990 and 1991; (3) defendants' denial of benefits should be reviewed under an abuse of discretion standard, not de novo; (4) plaintiff waived his right to contributions for 1990-1991 by entering into the employment agreement, and for 1994-1996 by entering into the letter agreement. n1 Plaintiff disputes these arguments, and responds to the waiver claims by arguing that: (1) they are barred under Rule 8(c) for failure to have pleaded waiver in the answer as an affirmative defense; (2) a waiver is impermissible under ERISA and the anti-alienation provisions of the Plan; (3) the alleged waivers are unenforceable as amendments to the Plan without having followed the Plan's amendment procedures; and (4) the undisputed facts do not show knowing and intelligent waivers.

n1 Defendants also claim, for the first time in a letter submitted after oral argument of the summary judgment motions, that plaintiff was not eligible to participate in the Plan. This belated claim is without merit, even if the court were to entertain the argument despite its having been waived by defendants' failure to raise it earlier. The new claim contradicts Dr. Kern's own deposition testimony, which acknowledged that plaintiff was eligible to participate, it is contrary to the explicit terms of the Prototype Agreement, and it is inconsistent with defendants' position throughout this litiga-

tion that plaintiff had knowingly and voluntarily waived his right to contributions to the Plan for certain years.

**\*11**

HN1 Motions for summary judgment are granted if, viewing the evidence and the inferences drawn from the facts in the light most favorable to the party opposing the motion, there is no genuine issue of any material fact, and the moving party is entitled to judgment as a matter of law. *See Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1995).* Since the material terms of the Plan are not disputed, I turn to defendants' arguments for not allowing plaintiff to recover for Kern's failure to make contributions to Krackow's pension account.

ERISA § 502(a)(1)(B), *29 U.S.C. § 1132*(a)(1)(B), HN2 permits a civil action by a plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Defendants' suggestion that plaintiff improperly seeks "contributions" is incorrect. Plaintiff seeks benefits based on the employer's contributions, as he is entitled to do.

Defendants also argue that, under the terms of the Plan and the evidence presented, plaintiff has not shown that he was entitled to contributions, even if he had not **\*12** waived them. This argument is predicated upon the fact that, as a profit sharing plan, pension contributions were not required in any particular year. This argument also lacks merit. Defendants do not claim, nor could they, that, absent a waiver, they could arbitrarily decide not to contribute to Krackow's pension account while they made contributions for other employees, and Kern testified that with the assistance of his accountant, who each year prepared a list of the employees with the figure for 15% of their earnings, he sent checks for those amounts for each employee's account at Smith Barney. There is no evidence to the contrary. Defendants argue that Kern merely described his general procedures but offer no proof that he did not follow his procedures in 1990 and 1991.

Defendants' claim that the appropriate standard of judicial review is the deferential standard is rejected. The determinative issue here is not HN3 interpretation of the terms of the Plan, or a determination of eligibility under the Plan, which are the traditional discretionary determinations of an administrator that may be entitled to deference if the Plan documents so provide. *See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111–15, 103 L. Ed. 2d 80, 109 S. Ct. 948 (1989).* **\*13** Instead, the critical issue here is whether there has

been a waiver of benefits, not in accordance with the provisions of the Plan, but pursuant to, for 1990–91, a separate employment agreement between Kern as employer and Krackow as about-to-be hired employee and, for 1994–96, a similarly separate agreement between them to resolve other financial disputes. HN4 Deference is inconsistent with the law that specifically governs waiver of ERISA benefits. Although an employee's agreement with an employer to waive benefits under an ERISA plan or to release a claim for benefits is permissible, "ERISA waivers require closer scrutiny by the district court than waivers of general contract claims." *Yak v. Bank Brussels Lambert, 252 F.3d 127, 131 (2d Cir. 2001).* A waiver of benefits under ERISA will be sustained only upon the court's finding, after close inspection of the totality of circumstances surrounding the waiver, that it was knowingly and voluntarily made. *Sharkey v. Ultramar Energy Ltd., 70 F.3d 226, 231 (2d Cir. 1995); Finz v. Schlesinger, 957 F.2d 78, 81–82 (2d Cir. 1992); Laniok v. Advisory Committee, 935 F.2d 1360, 1367–68 (2d Cir. 1991).* **\*14** This required judicial inquiry into the validity of the waiver is incompatible with the deferential standard of review of the determinations of an administrator.

Before considering the validity of the claimed waivers on their facts, plaintiff's arguments against allowing defendants to raise the waiver issue should be considered. Although defendants did not raise waiver as an affirmative defense in their answer, as they should have, Rule 15(a) HN5 provides that leave to amend shall be freely granted when justice so requires. The essence of this dispute always has centered on the enforceability of the agreements between Krackow and Kern in 1989 and 1994 as waivers of benefits that Krackow otherwise would have under the Plan for 1990–1991 and 1994–1996. Indeed, the complaint (at PP 43–49) specifically claims that Kern violated his fiduciary duty by drafting and presenting to Krackow the 1994 letter purporting to waive Krackow's right to pension plan contributions. Plaintiff does not and cannot claim any prejudice; the discovery materials provided with these motions show that the parties explored the facts relevant to waiver, there is no surprise and the issue was fully briefed in the motion **\*15** papers. The answer therefore will be deemed amended. *See LNC Investments, Inc. v. First Fidelity Bank, 2000 U.S. Dist. LEXIS 4617, 2000 WL 375236 (S.D.N.Y. 2000).*

Plaintiff's arguments that a waiver is impermissible under ERISA, and that Kern violated his fiduciary duty in securing waivers of pension plan benefits, also lack merit. As noted above, HN6 an agreement between the employer and an employee to waive benefits or to relinquish a claim for benefits is permissible if know-

ingly and voluntarily made. This includes an agreement by which the employee waives his right to participate in an ERISA plan in return for the payment of employment benefits. *See Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 181-82 (1st Cir. 1995).* Plaintiff's argument of a violation of fiduciary duty overlooks the fact that, in negotiating and securing such waivers, Kern acted as an employer or prospective employer, not in his fiduciary capacity as administrator of the Plan. *Cf. Lockheed Corp. v. Spink, 517 U.S. 882, 890, 135 L. Ed. 2d 153, 116 S. Ct. 1783 (1996)* (when employer undertakes to alter the terms of a plan, it is not acting in fiduciary capacity). ERISA recognizes *16 and explicitly approves an employer undertaking the dual role of plan administrator, despite the inherent conflict of loyalties, especially in a single employer pension plan. *Siskind v. Sperry Retirement Program, 47 F.3d 498, 506-07 (2d Cir. 1995),* cited with approval in *Lockheed, 517 U.S. at 890; see Flanigan v. General Elec. Co., 242 F.3d 78, 87 (2d Cir.), cert. denied, 151 L. Ed. 2d 580, 122 S. Ct. 665 (2001)* ("Fiduciary duty and prohibited transaction rules apply only to decisions by an employer acting in its fiduciary capacity"). Indeed, in *Lockheed,* the Supreme Court, after finding that the employer had no fiduciary duty to plan participants when it amended its pension plan to condition payment of early retirement benefits upon release of employment-related claims, further found that the members of Lockheed's retirement committee, who were assumed to be fiduciaries, did not violate their fiduciary duty by paying the benefits pursuant to the amended plan. The Court held HN7 that section 406(a)(1)(D) of ERISA, *29 U.S.C. § 1106 (a)(1)(D),* which prohibits certain transactions by fiduciaries, *17 does not apply to the payment of benefits pursuant to an agreement between employers and employees to release employment-related claims in return for the payment of benefits, just because the employer benefits from the agreement. *Lockheed, 517 U.S. at 893-95.* Likewise, the employer is not prohibited from obtaining a release of ERISA claims in return for the payment of employment benefits.

Nor do the anti-alienation and anti-assignment provisions of the Plan support plaintiff's argument. Like the IRS and ERISA requirements on which they are based *(26 U.S.C. § 401(a)(13); 29 U.S.C. § 1056(d)),* HN8 the anti-alienation and anti-assignment provisions are designed to prevent a plan participant from dissipating his benefits before retirement, not to bar an agreement by the employee with the employer to forego benefits or to waive a claim for benefits. *Lumpkin v. Envirodyne Indus., Inc., 933 F.2d 449, 455-56 (7th Cir.), cert. denied, 502 U.S. 939, 116 L. Ed. 2d 324, 112 S. Ct. 373 (1991)* (holding that anti-alienation provision "does not

impose a bar on settlement agreements wherein pension claims *18 are knowingly and intentionally resolved by employees").

The waivers also are not unenforceable for failure to follow the procedure for amending the Plan. The Second Circuit in *Laniok, 935 F.2d at 1366*HN9 , rejected the argument that obtaining an individual waiver of benefits from an employee violates the rule that plan documents cannot be altered except by the procedures for amendment that are set forth in those documents. "We do not believe that an individual waiver of the right to participate varies the terms of the plan itself; it does not alter the plan's definition of eligibility." *Id.* I therefore turn to the merits of defendants' arguments that plaintiff waived any rights to participate in the Plan for the years 1990–1991 and 1994–1996.

### Alleged Waiver of Benefits for 1990–1991

The undisputed facts show that the Plan was in effect for the years 1990 and 1991, that contributions were made in accordance with the Plan, and that, but for plaintiff's alleged waiver of benefits based on those contributions, he would be entitled to benefits for those years. Upon review of the motion papers, defendants have failed to present evidence creating a genuine *19 issue of material fact on their defense that plaintiff knowingly and voluntarily waived his right to benefits for 1990–91 in a manner that satisfies the stringent requirement, described *supra* at p. 8, for waiver of ERISA benefits. Rather, the undisputed facts establish there was no waiver.

To begin with, the employment agreement does not provide that Krackow waived his right to contributions for those years, nor does it set forth the eligibility provisions of the Plan. It is undisputed that Krackow did not receive a copy of the Plan, a Plan summary, or other Plan documents in 1989 from which he could have determined the Plan's coverage. Krackow testified that he did not know that he was entitled to the benefit of employer contributions to the Plan after one year and that he did not intentionally relinquish those benefits. The sole evidence relied upon by defendants to create an issue of fact as to whether Krackow knew that he was eligible to participate in the Plan after one year and that he nevertheless knowingly and voluntarily waived that right is Kern's testimony. n2

n2 The court granted defendants' request for an opportunity to submit a letter, after oral argument of the summary judgment motions, setting forth any additional deposition testimony by Kern that was pertinent to this issue. In that letter, in ad-

dition to discussing Kern's testimony, defendants proffered that, at a trial, they would present expert testimony that "waivers of pension rights are the routine subject of discussion during the negotiation of ... employment agreements" by professionals, and therefore "it would be reasonable to assume that any sophisticated party would be aware of the existence of such pension rights and the potential for waiver in any employment negotiations." But defendants cannot overcome deficiencies in their evidence as to what actually occurred by offering evidence of what an "expert" assumes happened.

*20

But Kern never testified that he informed Krackow of his eligibility to participate in the Plan after one year, or that Krackow knowingly gave up his right to participate in the Plan in 1990–91 after he had been informed that he would otherwise be eligible to participate pursuant to the terms of the Plan. In fact, Kern did not unequivocally controvert Krackow's testimony that Kern affirmatively misled him as to the Plan's eligibility provisions; but even viewing Kern's equivocal testimony most favorably to him, at most he denies affirmatively misleading Krackow. Kern testified that he was not willing to pay Krackow more than a total of $100,000 in total starting compensation, that he told Krackow that he could take the entire amount as salary or partially as a "401(k)", and that Krackow elected to take his entire compensation as salary for the first three years, after which Krackow also would receive "15 percent into his plan. A plan would be started for him." Kern also testified that he "probably" informed Krackow that a retirement plan existed, but Kern did not remember anything else he may have told Krackow about the Plan. Thus, Kern did not testify that he informed Krackow that, *21 under the terms of the Plan, Krackow was entitled to contributions by Kern on his behalf after one year. Kern also did not testify that he told Krackow that he would have to agree to waive his rights to participate in the Plan for two years if Krackow wanted his $100,000 in salary in the first year, $105,000 in salary in the second year and $110,000 in salary in the third year.

HN10 "The inquiry into waiver consists of two questions: whether a party actually knew she was relinquishing a benefit, and whether she acted voluntarily in doing so." *Smart, 70 F.3d at 182.* While "an employee does not need to know" that he is waiving "rights *under ERISA*," the employee must know that he is waiving "rights *under a benefit plan* that ERISA happens to protect." *Id.* at n.5 (emphasis in original).

HN11 The following non-exhaustive factors are considered in determining whether the totality of the circumstances shows that an employee's waiver of participation in an ERISA pension plan or the release of an ERISA claim is knowing and voluntary:

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement *22 before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, as well as whether ... the employee had a fair opportunity to do so and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Laniok, 935 F.2d at 1367–68,* quoting *Bormann v. AT&T Communications, Inc., 875 F.2d 399, 403* (2d Cir.), *cert. denied, 493 U.S. 924, 107 L. Ed. 2d 272, 110 S. Ct. 292 (1989).* The foregoing is not a "checklist of all applicable factors ... and rigid adherence to such a list is foreclosed by the very nature of the inquiry." *Id.* at 1368. Thus, in *Laniok,* the court reversed the district court's grant of summary judgment to the employer, notwithstanding the evidence that the employee made a voluntary and intelligent decision to waive participation in a pension plan in return for other benefits, because the facts, viewed most favorably to plaintiff as non-movant, did not exclude the possibility "that Laniok *23 did not agree to waive pension plan participation before he was hired, but ... signed the waiver form without a clear idea of what he was giving up, and without receiving anything of value in exchange ...." *Id.* at 1369. In *Bormann,* the reasoning of which *Laniok* adopted for ERISA cases, the Second Circuit affirmed the finding of waiver (in that case, of ADEA benefits) because the district court had conducted a trial of "the only genuine factual issue of whether the company misrepresented the effect of the releases." *Bormann, 875 F.2d at 403.*

Defendants argue that the *Laniok-Bormann* factors show that Krackow's waiver was voluntary, pointing to his education, advanced degrees, the negotiation of changes to the employment agreement, the clarity of the agreed-to compensation terms set forth in the addendum to the employment agreement, Krackow's representation by counsel, and the significantly increased salary Krackow earned over the previous year by joining Kern. However, in this case, these considerations show only

that Krackow was capable of entering into a valid and binding agreement to waive his right to participate in the Plan, not that he *24 in fact did so knowingly and voluntarily for 1990-91. In *Bormann*, the release was "'written in clear and unambiguous language,' specifically referring to" the claims being waived. *875 F.2d at 403*. In stark contrast, in the present case, there is no release or other document that makes specific reference to a claim being waived for 1990-91, only an employment agreement that provided for "Keogh Plan" contributions of 15% beginning in the fourth year. The evidence relied upon by defendants to show an agreement to waive benefits in 1990-91 also contrasts sharply with the documents evidencing a waiver for 1994-96. For those years, the parties executed a letter agreement that specifically set forth Krackow's entitlement under the Plan and Krackow's decision to waive those benefits was unambiguously expressed. In addition, Krackow executed a series of letters to Smith Barney waiving any contribution to the Plan for each of the years 1994, 1995 and 1996.

Defendants' reliance on *Finz*, in which the Second Circuit affirmed the district court's grant of summary judgment to the employer, also is misplaced. There, the undisputed evidence "clearly indicated that at the time *25 he signed the agreement Finz believed that he was entitled to a pension despite defendants' representations to the contrary," so that "Finz' subsequent discovery of information confirming his belief ... did not vitiate his waiver." *Finz, 957 F.2d at 81*. Finz, a former state court judge and "astute lawyer," *id. at 83*, therefore "understood that his waiver would settle the parties' dispute over his coverage under the plan." *Id.* In this case, by contrast, there is no evidence that shows that Krackow knew or believed that he was eligible for participation in the Plan after one year but chose to relinquish any rights he had. Since defendants have not shown an issue of fact as to whether plaintiff knew he was "relinquishing a benefit," *Smart, 70 F.3d at 182*, and voluntarily did so, plaintiff's motion for partial summary judgment for the 1990-91 period is granted.

**Waiver of Benefits for 1994-1996**

With respect to plaintiff's claim for benefits for 1994-1996, unlike 1990-1991, defendants are entitled to summary judgment under *Finz*. The undisputed evidence shows that Krackow knew the precise benefits under the Plan that *26 he was waiving; the specific sums that would have been paid for those years were set forth in the letter agreement. The 1994 letter agreement is unambiguous, and the waiver was given for valuable consideration by settling Kern's claims for reimbursement regardless of Krackow's own view of the

fairness of Kern's accusations. Plaintiff claims in conclusory fashion that he acted under "duress", but he makes no effort to show that he can establish the elements of the legal defense of duress. HN12 That plaintiff felt that it was in his best interests to agree to Kern's demand for reimbursement in order to preserve their employment relationship is not duress. Krackow's bland assertion that he felt he "did not have any meaningful choice" does not make out that defense. Krackow had ample time for reflection and opportunity to repudiate the agreement; instead, he ratified it by continuing to perform under the agreement, signing letters to Smith Barney for each of the three years to confirm his waiver of pension contributions. Nothing in plaintiff's deposition testimony or other evidence presented in these motions creates a genuine factual issue whether the waiver was knowing and voluntary.

**\*27 Claims of Breach of Fiduciary Duty and Failure to Provide Plan Documents**

Krackow claims that Kern violated his fiduciary duty under ERISA by seeking and obtaining a waiver from Krackow of his entitlement to contributions to the Plan for 1994-96 and by entering into the letter agreement in 1994 to effectuate that waiver. By doing so, plaintiff alleges, defendants acted to benefit Kern as employer in violation of Kern's duties as Plan trustee to Krackow. Krackow further claims that Kern violated his fiduciary duty in 1999-2000 by linking payment of benefits attributable to contributions that should have been made in 1990 and 1991 (an obligation which plaintiff claims was acknowledged by defendants' counsel) to an overall settlement of employment issues between Krackow and Kern. There is no merit to these claims. As the cases discussed *supra* at pp. 8-10 establish, ERISA does not prohibit actions such as these by an employer, which are properly undertaken by the employer in his capacity as such and not in his capacity as a fiduciary for an ERISA plan. n3 Defendants' motion for summary judgment dismissing the claims of breach of fiduciary duty is granted.

> n3 At oral argument of the summary judgment motions, plaintiff's counsel acknowledged that plaintiff sought the same monetary relief for both breach of fiduciary duty and failure to pay benefits due under the Plan, and that the claims of breach of fiduciary duty were a different theory for the same recovery. The complaint therefore fails to state a claim HN13 under § 502(a)(3) of ERISA, *29 U.S.C. § 1132*(a)(3), which authorizes an action for breach of fiduciary duty only if it seeks equitable relief and relief is unavail-

able under other ERISA enforcement provisions for the injury claimed. *See Great–West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002)* (an action for money damages may not be brought under § 502(a)(3)); *Varity Corp. v. Howe, 516 U.S. 489, 512, 134 L. Ed. 2d 130, 116 S. Ct. 1065 (1996)* (§ 502(a)(3) is a "catchall" provision that affords "appropriate equitable relief for injuries caused by violations of fiduciary duty that § 502 does not elsewhere adequately remedy").

**\*28**

Plaintiff did not respond to defendants' argument that the claim under ERISA § 502(c), *29 U.S.C. § 1132*(c), for failure to supply requested information, should be dismissed. Section 502(c) HN14 provides that an administrator who fails to provide to a plan participant, within 30 days of a request, certain information that ERISA requires the administrator to supply "may in the court's discretion be personally liable to such participant ... in the amount of up to $100 a day from the date of such failure or refusal ...." It appears undisputed that virtually all of the documents requested were produced, although a few days late. Furthermore, plaintiff does not clearly establish that the remaining documents were required to be supplied under ERISA, and there is no showing that plaintiff was prejudiced either by delayed disclosure of documents or by any failure to produce other documents. Considering all of these circum-

stances, in the court's discretion, no sanction is imposed upon defendants, and the claim of a disclosure violation is dismissed.

**Conclusion**

Plaintiff Robert Krackow's motion for partial summary judgment on his claim for benefits for 1990–1991 is **\*29** granted, and the motion of defendants for summary judgment dismissing that claim is denied. Defendants' motion for summary judgment dismissing the remaining claims, *i.e.,* plaintiff's claim for benefits for 1994–1996, plaintiff's claims of breach of fiduciary duty, and the claim based on failure to supply requested information, is granted. The parties are directed to attempt to resolve all issues regarding damages for the 1990–91 period, including defendants' argument that contributions in 1990 should be based only on post–July 1 compensation, within 30 days of the date of this Order and to notify the court in writing by July 8, 2002 if they have not been resolved, identifying with specificity the matters that remain to be determined, and the basis for each party's position and the evidence upon which it is based.

**SO ORDERED.**

**NINA GERSHON**

**United States District Judge**

**Dated: Brooklyn, New York**

**May 29, 2002**

B

LEXSEE 2001 U.S. DIST. LEXIS 107

**APRIL BENNETT, Plaintiff, v. CNA INSURANCE COMPANIES, et al., Defendants.**

**No. C–99–03127 EDL**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*2001 U.S. Dist. LEXIS 107*

**January 4, 2001, Decided**
**January 5, 2001, Filed; January 8, 2001, Entered in Civil Docket**

**DISPOSITION:** *1 Defendants' motion for summary judgment GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants, an employee benefit plan and its insurer, moved for summary judgment on the ground, inter alia, that the settlement agreement between plaintiff and her employer in a prior employment discrimination action released defendants from liability in plaintiff's action to recover unpaid disability benefits.

**OVERVIEW:** Plaintiff brought an action under the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., seeking unpaid disability benefits from defendants, an employee benefit plan and its insurer. Defendants asserted, inter alia, that defendants were released from liability by the prior settlement agreement executed by plaintiff to resolve her employment discrimination and sexual harassment claims against her employer. The court held that defendants were included within the unambiguous scope of the release since they were agents and entities acting on behalf of plaintiff's employer, which administered defendant plan. Further, the settlement constituted a knowing and intelligent waiver of plaintiff's disability benefits claims. Based on plaintiff's college education, business sophistication, opportunity to review the settlement, representation by counsel, and receipt of substantial consideration, the specific exclusion of pension benefits from the release indicated that the lack of such an exclusion for disability benefits was intended to include disability benefits within the scope of the release.

**OUTCOME:** Motion for summary judgment was granted; defendants, an employee benefit plan and its insurer, as agents of plaintiff's employer, were included in plaintiff's release of her prior employment discrimina-

tion action, and the express exclusion of pension benefits in the release indicated that plaintiff knowingly and intentionally elected not to exclude disability benefits from the release.

**LexisNexis(R) Headnotes**

*Civil Procedure > Settlements > Settlement Agreements*
HN1 See *Cal. Civ. Code § 1542*.

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
HN2 *Fed. R. Civ. P. 56(c)* provides that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Material facts are those that may affect the outcome of the case. A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. The court may not weigh the evidence. Rather, the nonmoving party's evidence must be believed and all justifiable inferences must be drawn in the nonmovant's favor.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*
HN3 The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatory answers, admissions, and affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. Where the nonmoving party will bear the burden of proof at trial, the moving party's burden is discharged when it shows the court that there is an absence of evidence to support the nonmoving party's case.

*Civil Procedure > Summary Judgment > Burdens of*

*Production & Proof*

HN4 A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of that party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Fed. R. Civ. P. 56(e)*. However, the opposing party need not produce evidence in a form that would be admissible at trial in order to avoid a summary judgment. Nor must the opposing party show that the issue will be resolved conclusively in its favor. All that is necessary is sufficient evidence supporting the asserted factual dispute and requiring a jury or judge to resolve the parties' differing versions of the truth at trial.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*

HN5 To determine whether there has been a knowing and voluntary relinquishment of employee benefits claims, courts examine the totality of the circumstances, including (1) the plaintiff's education, business experience and sophistication, (2) the amount of time the plaintiff had to review the agreement, (3) whether the plaintiff was represented by counsel, (4) clarity of the agreement, (5) whether and what kind of consideration was given, and (6) the plaintiff's role in negotiating the agreement.

**COUNSEL:** For APRIL BENNETT, Plaintiff: Constantin V. Roboostoff, Constantin V Roboostoff, Scott D Kalkin, Roboostoff & Kalkin, San Francisco, CA.

For CNA INSURANCE COMPANIES, defendant: Margie R. Lariviere, Kelly Herlihy & Klein LLP, San Francisco, CA.

For CODDING ENTERPRISES LONG TERM DISABILITY PLAN, TERM DISABILITY PLAN, defendants: Thomas M. Herlihy, Margie R. Lariviere, Kelly Herlihy & Klein LLP, San Francisco, CA.

For CONTINENTAL CASUALTY COMPANY, defendant: Margie R Lariviere, Kelly, Herlihy, Advani & Klein, San Francisco, CA.

**JUDGES:** ELIZABETH D. LAPORTE, United States Magistrate Judge.

**OPINIONBY:** ELIZABETH D. LAPORTE

**OPINION:**

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**I INTRODUCTION**

On June 28, 1999, pursuant to the Employee Retirement Income Security Act (ERISA), *29 U.S.C. § 1001, et seq.*, plaintiff April Bennett filed this suit against defendant Codding Enterprises Long Term Disability Plan and the insurer, defendant Continental Casualty Company, seeking unpaid disability benefits. On October 31, 2000, Defendants moved for summary judgment on the following two issues: (1) that *2 a confidential Settlement Agreement and Mutual Release ("Settlement") executed by plaintiff in her employment discrimination action constituted a waiver by plaintiff of her rights to bring this action and (2) that plaintiff's December 6, 1996 resignation from Codding Enterprises, as required by the Settlement, rendered her ineligible for disability benefits as of that date under the policy issued by defendant Continental Casualty Company to plaintiff's employer, Codding Enterprises.

On November 21, 2000, plaintiff opposed the motion and purported to bring a cross–motion for summary judgment, seeking judgment as a matter of law that: (1) plaintiff did not waive her right to bring this action by entering into the Settlement because defendants were not parties to the Settlement; (2) even if defendants were parties to the Settlement, the waiver contained therein was ambiguous and plaintiff did not knowingly and voluntarily waive her rights to seek disability benefits; and (3) plaintiff's eligibility for coverage did not terminate as of December 6, 1996. Plaintiff did not comply with the procedures for bringing a cross–motion for summary judgment. See Civil L.R. 7-2, 7-3(d). Since *3 plaintiff's cross–motion is not properly before the Court, the Court declines to rule on that cross–motion. Defendants filed a timely reply.

On December 12, 2000, the Court held a hearing on defendants' motion for summary judgment. Both parties appeared through their counsel of record. Upon consideration of the parties' submissions, the arguments at the hearing, the relevant authorities and the record in this case and good cause appearing, the Court enters the following order.

**II FACTS**

Plaintiff worked for Codding Enterprises, and its affiliated companies, for approximately 20 years and participated in defendant Codding Enterprises Long Term Disability Plan ("the Plan") for approximately 19 years. See April Bennett Decl. at 2:7; Reginald Bayley Decl. at 2:9–10, 12–13. At the time of her disability, plaintiff was Vice President of leasing and property management for Codding Investments, Inc. See Bayley Decl. at 2:20–

21.

Defendant Continental Casualty Company ("Continental") issued a group disability insurance policy to Codding Enterprises, which paid premiums for disability coverage of eligible employees. See Bayley Decl. at 2:11–17, Defendants' Motion at Ex. *4  1. A copy of the policy was provided to all Plan participants. See Bayley Decl. at 2:18–19. Through the policy, Continental, on behalf of Codding Enterprises, offered long term disability benefits to eligible employees, like plaintiff, who participated in the Plan. See Bayley Decl. at 2:11–17. Codding Enterprises is the Plan Administrator of the Plan. See Bayley Decl. at 2:7–8. The Plan is an entity of Codding Enterprises. See Supplemental Bayley Decl., dated April 17, 2000 at 1:11–12.

On January 20, 1996, Plaintiff submitted a claim for disability benefits stating that she was first injured on September 19, 1991. See Defendants' Motion at Ex. 3. She described her injury as an "injured back, neck, numbness, and paralysis of right arm + leg." Id. She stated that her "last date worked for current disability" was December 8, 1995. Id.

After a routine claim investigation, Continental began making payments to Plaintiff on February 7, 1996 based on a salary figure of $3875.00 per month, which was plaintiff's salary as of July 1, 1995. n1 See Joint Statement of Undisputed Facts dated March 28, 2000, at 1:23–25. Prior to July 1, 1995, plaintiff's salary *5 was $7750.00 per month, but Codding Enterprises reduced her salary based on her inability to adequately perform her job. See Bennett Decl. at 2:7–12.

n1 According to the policy, disability benefits are paid at a rate of 66 2/3% of the employee's salary, or $6000.00, whichever is less. See Defendants' Motion at Ex. 1, p. D9.

On March 29, 1996, Codding Enterprises sent a letter to Continental asking it to reconsider its calculation of plaintiff's benefit award. See Joint Statement of Undisputed Facts dated March 28, 2000 at Ex. 5. On June 6, 1996, plaintiff appealed Continental's calculation of her benefits based on her $3875.00 per month salary and requested that her benefits be recalculated based upon her "full salary of $7750.00 per month." Id. at Ex. 6. These appeals were unsuccessful and Continental paid benefits to plaintiff, based on the salary of $3875.00, from February 7, 1996 through October 7, 1996. See id. at 2:12. Subsequently, in August 2000, this Court granted partial summary *6 judgment on this issue, finding no triable issue of material fact that

plaintiff was partially disabled under the plan and that Continental used the correct salary amount, that is, the salary in effect at the onset of her total disability. n2 See Defendants' Motion at Ex. 4.

n2 Plaintiff's counsel's request, in a letter dated October 13, 2000, that he be able to re-examine the issue of plaintiff's partial disability through testimony of Dr. Gary McCarthy is not well-taken. Plaintiff appears to be seeking a motion for reconsideration, which is not properly brought in a letter to the court. See Civil L.R. 7-9. Plaintiff had ample opportunity to explore this issue and plaintiff's letter does not meet the standards for reconsideration under Civil Local Rule 7–9.

On September 30, 1996, plaintiff notified Continental that she had returned to work. See id. at 2:7. On December 5, 1996, plaintiff discontinued work due to her disability, but apparently did not notify Continental. See Bennett Decl. at 2:  *7  15–17. Plaintiff stated that she has been unable to work since December 5, 1996. See id. at 2:18–19.

Meanwhile, plaintiff filed a claim for sexual harassment/employment discrimination on May 29, 1996. See Bayley Decl. at 2:25–27. On December 6, 1996, the day after plaintiff states she stopped working again, the parties attended mediation for those claims. See id. at 3:1–3. The claims were resolved and plaintiff, who was represented by counsel, entered into a confidential Settlement Agreement and Mutual Release ("Settlement") with Codding Enterprises, Codding Investments, Hugh Codding and David Codding ("Codding Defendants") on December 27, 1996. See Defendants' Motion at Ex. 5 (under seal). In the Settlement, plaintiff granted a complete general release to the Codding Defendants and to

their agents, servants, employees, officers, directors and shareholders, or any other person or persons, firm, corporation, association, partnership or entity acting on their behalf, and all other related business entities of any type owned and operated at this time, or at any past time by the Codding Defendants, or any of them. . . .

See id. at P 2. The Settlement *8  provided that the terms and conditions shall be confidential and "the parties agree not to disclose said matters . . . unless legally required to do so." Id. at P 7.

The Settlement provided a substantial payment to

plaintiff and included a mutual release "expressly intended to cover and include all claims, several or otherwise, past, present or future, which can or may ever be asserted . . . ." See Defendants' Motion at Ex. 5 at P 5. The parties acknowledged that the release covered "all claims of every kind or nature, past present or future, known or unknown, suspected or unsuspected, and all claims under Section 1542, Civil Code of California were . . .expressly waived." n3 See Defendants' Motion at Ex. 5 at P 6.

> n3 HN1 *California Civil Code § 1542* states, "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

The intent *9 of the parties was to effect a "full, final and complete settlement of all differences, allegations and claims by each against the other . . . ." See Defendants' Motion at Ex. 5 at P 18. Further, the parties agreed that as of December 27, 1996, the only "obligation existing between the parties is the obligation to perform the provisions of the agreement." See id. Plaintiff also agreed that "she will not file suit in any court upon any claim which she now has or ever may have against the Codding Defendants, or any of them." See id. at P 11. The agreement constituted the "entire agreement of the parties on these matters, superseding any previous agreement between them . . . ." See id. at P 16. Effective December 6, 1996, plaintiff resigned from Codding Enterprises as required by the Settlement. See id. at P 9.

### III DISCUSSION

#### A. Summary Judgment Standard

HN2 *Rule 56(c) of the Federal Rule of Civil Procedure* provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that *10 the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. Material facts are those that may affect the outcome of the case. See *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. See id. The court may not weigh the evidence. See *id. at 255*. Rather, the nonmoving party's evidence must be believed and "all jus-

tifiable inferences must be drawn in the nonmovant's favor." *United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989)* (en banc) (citing *Liberty Lobby, 477 U.S. at 255*).

HN3 The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatory answers, admissions and affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. See *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. *11 Where the nonmoving party will bear the burden of proof at trial, the moving party's burden is discharged when it shows the court that there is an absence of evidence to support the nonmoving party's case. See *id. at 325*.

HN4 A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of that party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P. 56(e)*; *Liberty Lobby, 477 U.S. at 250*. However, the opposing party need not produce evidence in a form that would be admissible at trial in order to avoid a summary judgment. See *Celotex, 477 U.S. at 324*. Nor must the opposing party show that the issue will be resolved conclusively in its favor. See *Liberty Lobby, 477 U.S. at 248-49*. All that is necessary is sufficient evidence supporting the asserted factual dispute and requiring a jury or judge to resolve the parties' differing versions of the truth at trial. See id.

#### B. The Settlement Constituted a Waiver by Plaintiff to Bring this Action.

The Settlement released the Codding Defendants *12 and

> their *agents*, servants, employees, officers, directors, and shareholders, *or any other person or persons, firm, corporation, association, partnership or entity acting on their behalf, and all other related business entities of any type owned and operated at this time, or at any past time by the Codding Defendants, or any of them,* . . . .

See Defendants' Motion at Ex. 5 at P 2 (emphasis added). Neither the Plan nor Continental are specifically named as releasees in the Settlement.

The Plan, however, is administered by Codding Enterprises, a party which was specifically released in the Settlement. See Bayley Decl. at 2:7-8, Defendants' Motion at Ex. 5 at p. 1. Moreover, the Plan is an entity

of Codding Enterprises. See Supplemental Bayley Decl. dated April 17, 2000 at 1:11–12. Codding Enterprises provided disability benefits to its employees through the Plan. See Bayley Decl. at 2:12–13. Further, at the hearing, defendants' counsel represented that the Plan is owned by Codding Enterprises. Since the Plan is an "agent" of and an "entity acting on behalf" of Codding Enterprises (as well as apparently "owned" by Codding Enterprises), the *13 Plan is released under the plain language of the Settlement.

Similarly, Continental provided a group disability insurance policy to Codding Enterprises in exchange for premiums paid by Codding Enterprises. See Bayley Decl. at 2:11–17. Through this policy, Continental, on behalf of Codding Enterprises, provided long term disability benefits to eligible employees. See Bayley Decl. at 2:11–17. Under this arrangement, Continental is an "agent" of and an "entity acting on behalf" of Codding Enterprises. Therefore, Continental is released under the plain language of the Settlement.

The Settlement is integrated and unambiguous, so no extrinsic evidence is permitted. n4 See Defendant's Motion at Ex. 5 at P 16; *Sunniland Fruit, Inc. v. Verni, 233 Cal. App. 3d 892, 898, 284 Cal. Rptr. 824 (1991); Cerritos Valley Bank v. Stirling, 81 Cal. App. 4th 1108, 1115–16 (2000).* There is no triable issue of material fact as to the applicability of the Settlement to the Plan and Continental. Plaintiff released the Plan and Continental by executing the Settlement and is therefore barred from bringing this action.

> n4 California law applies to interpretations of the Settlement. See Defendants' Motion at Ex. 5 at P 19.

*14

Moreover, plaintiff knowingly and voluntarily waived her disability benefits claims in the Settlement. HN5 To determine whether there has been a knowing and voluntary relinquishment of employee benefits claims, courts examine the totality of the circumstances, including (1) the plaintiff's education, business experience and sophistication, (2) the amount of time the plaintiff had to review the agreement, (3) whether the plaintiff was represented by counsel, (4) clarity of the agreement, (5) whether and what kind of consideration was given and (6) the plaintiff's role in negotiating the agreement. See *Smart v. Gillette, 70 F.3d 173, 181, n.3 (1st Cir. 1995); Leavitt v. Northwestern Bell Tel. Co., 921 F.2d 160, 162 (8th Cir. 1990).*

Here, the undisputed evidence regarding the factors set forth in Leavitt and Smart show that plaintiff re-

leased her disability benefit claim when she signed the Settlement. First, plaintiff is college-educated and is sophisticated and experienced in business, as evidenced by her 20-year employment with Codding Enterprises including her last position as a vice-president. Second, although it is unclear exactly how much *15 time plaintiff had to look at the agreement, the mediation took place on December 6, 1996 and she did not execute the agreement until December 27, 1996. Third, plaintiff was represented by counsel. Fourth, the Settlement expressly exempts vested pension benefits from the release, but does not exempt disability benefits. Fifth, plaintiff received substantial consideration for the release. Sixth, plaintiff attended the entire mediation on December 6, 1996, during which the Settlement was negotiated. See Bayley Decl. at 3:1. The Settlement was specifically tailored to her situation, in contrast, for example, to a standard severance package offered on a "take it or leave it" basis to multiple employees in a lay-off.

Examination of the totality of the circumstances demonstrates that plaintiff knowingly and voluntarily released her claims to employee disability benefits in the Settlement. This conclusion is reinforced by the fact that the Settlement specifically exempted vested pension benefits, which shows that the parties discussed at least one employee benefit plan and knew how to exclude it from the general release in crafting the Settlement. The exclusion of pension benefits demonstrates *16 that the parties did not regard employee benefits as being outside the scope of the Settlement unless expressly excluded. Thus, the parties knew that other employee benefits would be released by the Settlement. See *Smart, 70 F.3d at 179.*

## IV OBJECTIONS TO EVIDENCE

### A. Objections By Defendants

Defendants object to Exhibits N through T submitted by plaintiff in opposition to the motion for summary judgment. The exhibits are irrelevant in light of the Court's ruling on the effect of the Settlement.

Defendants also object to several portions of April Bennett's declaration submitted in opposition to defendants' motion for summary judgment. With respect to paragraph 4, defendants' objection is overruled.

With respect to paragraph 6, defendants' objection is sustained in part to the extent that plaintiff cannot testify to the medical conclusion that her symptoms were "caused by Chronic Fatigue Syndrome and post-traumatic fibromyalgia." The remaining objection is overruled.

With respect to paragraphs 7 and 8, defendants' ob-

jections are overruled. With respect to paragraph 9, defendants' objections based on lack of foundation and on violation of the parole *17 evidence rule are sustained. Defendants' objections to paragraph 11 are overruled.

With respect to paragraph 12, defendants' objection is sustained to the extent that plaintiff purports to testify about what Bayley knew. Defendants' objection to plaintiff's Exhibit U is overruled. Finally, with respect to paragraph 13, defendants' objection is overruled.

Defendants object to portions of John A. McGuinn's declaration. The objections based on violation of the parole evidence rule to the last sentence of paragraph 6 and to paragraphs 7 and 8 are sustained.

**B. Objections By Plaintiff**

Plaintiff objects to the Bayley declaration in general, stating that it contains inadmissible hearsay and violates a court order that the complaint filed with the California Department of Hair Employment and Housing is inadmissible. The general objection to Bayley's declaration is overruled. The declaration does not violate a court order because Bayley did not file a copy of the complaint with the Court but simply stated that plaintiff filed such a complaint.

Plaintiff's objections to paragraph 8 is overruled as to all but the last clause ("claiming that Codding was

preventing her from working. *18 ").

Plaintiff objects to paragraph 14 on the ground that it lacks a proper foundation. Plaintiff's objection is overruled. Bayley declared that he was responsible for overseeing the Plan and that he had personal knowledge of the matters in the declaration. These facts provide an adequate foundation.

**V CONCLUSION**

Since the Plan and Continental were released under the broad and unambiguous language of the Settlement, plaintiff's action is barred. Further, plaintiff knowingly and voluntarily waived her right to bring her disability benefits claim when she executed the Settlement. Therefore, defendants' motion for summary judgment (docket no. 64) is GRANTED. Accordingly, the remaining issue of whether plaintiff is entitled to benefits after December 6, 1996 is moot. This order also disposes of defendants' objections to evidence (docket no. 75) and plaintiff's objections to evidence (docket no. 69). The clerk shall close the file.

Dated: January 4, 2001

ELIZABETH D. LAPORTE

United States Magistrate Judge